PARKE, DAVIS & COMPANY *v.* COOK, revenue commissioner.

No. 14971. October 13, 1944.

*B. D. Murphy, Julian S. Carr*, and *Edgar Watkins*, for plaintiff.

*T. Grady Head*, attorney-general, *Victor Davidson*, and *Claude Shaw*, assistant attorneys-general, for defendant.

WYATT, Justice. ■ The first question here for consideration is one of procedure. The petition is expressly brought under the Code, § 92-3310, which provides as follows: "No suit or proceedings shall be maintained in any court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, or of any penalty or interest claimed to have been excessive or in any manner wrongfully collected, until a claim for refund has been duly filed with the State Revenue Commission; no such suit or proceeding shall be begun before the expiration of three months

from the date of filing such claim, unless the commission renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax or penalty, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which suit or proceeding relates. The commission shall, within 90 days after any such disallowance, notify the taxpayer by mail." This section was codified from the 1931 income-tax act. Ga. L. Ex. Sess. 1931, p. 55, § 43.

The defendant in error contends that this proceeding is governed by the act for the "administration of taxing laws" (Ga. L. Ex. Sess. 1937-38, pp. 77, 95, § 34 (b)), reading as follows: "In any case in which it shall be determined that an erroneous or illegal collection of tax or license has been made by the commissioner, the taxpayer from whom such tax or license was collected may file a claim for refund with the said commissioner in writing and in such form and containing such information as the commissioner may require, to include a summary statement of the grounds upon which the taxpayer relies. In the event the taxpayer desires a conference or hearing before the commissioner in connection with any claim for refund, he shall so specify in writing in the claim, and if the claim conforms with the requirements of this section, the said commissioner shall grant such a conference at a time he shall specify. The commissioner shall consider information contained in taxpayer's claims for refund and such other information as may be available and shall approve or disapprove the taxpayer's claim and notify such taxpayer of his action. In the event any claim for refund is approved, the commissioner shall forthwith proceed under subsection (a) of this section to give effect to the terms thereof. Provided, further, that the taxpayer whose claim for refund is denied by the commissioner under the terms of this act, shall have the right to sue for refund in the superior court of the county in which said taxpayer would have a right to appeal from a judgment by the Board of Tax Appeals, as in this act provided." It is contended that the general demurrer was properly sustained because the petition failed to show that the claim for refund was in writing as required by this section, and because the petition failed to show that there had been a legal determination that an erroneous or illegal collection of the tax by the commissioner had been made prior to the filing of the claim for refund. We deem

it unnecessary to cite authorities for the well-settled principle of law in this State to the effect that, when an instrument is required by law to be in writing and a petition describes the instrument to be in compliance with the law, as against general demurrer, the instrument will be presumed to be in writing. We can understand the force of the argument that, before a claim for refund is filed with the revenue commissioner there should be a legal determination that the tax was erroneously or illegally collected by the commissioner. In the instant case, however, the petition alleges that payment of the tax was made under protest on January 20, 1942; and "promptly thereafter a claim was made for a refund thereof." The refund was not formally denied until January 4, 1944.

In 1941, the General Assembly of Georgia amended the tax act of 1938, limiting the jurisdiction of the Board of Tax Appeals to the review of assessments on tax returns for ad valorem taxes, and provided: "All cases, matters, claims, and controversies of whatsoever nature except those relating to the assessments of which jurisdiction in the State Board of Tax Appeals is retained by this act shall, upon the approval of this act, be recommitted to the State revenue commissioner who shall thereupon proceed to pass upon and determine any questions therein presented or involved. Any such ruling by the State revenue commissioner shall be subject to review by the courts as now provided for by said act of January 3d, 1938, as fully as if such rulings had been reviewed by the State Board of Tax Appeals." Ga. L. 1941, p. 202, § 2. Regardless of what was the state of the law on this question before the act of 1941, it seems clear that the above-quoted provisions of this act conferred upon the State revenue commissioner authority to determine in the first instance the question presented in the controversy now under consideration, and provided for a review of his ruling in the exact manner followed by the plaintiff in this case. To hold otherwise, would in fact close the doors of all courts and tribunals to the plaintiff in error with reference to any review of the ruling of the commissioner in the instant case; and that without any fault or negligence on its part. This result should and will be prevented by this court. We hold that the proceeding and the suit for refund in this case have been properly brought.

■ The assignments of error are eight in number. However, the plaintiff in error, in its brief, very conveniently groups the

questions raised into three divisions, and we thus deal with them in this opinion. The first question, as stated by this brief, is as follows: "Does § 92-3113 of the Code as amended by the act of March 30, 1937, contemplate that there shall be included as 'Georgia sales,' in the apportionment formula, sales made as the sales of the plaintiff are made? If it does so contemplate, is the department correct in construing the formula to require the inclusion as 'Georgia sales' of all sales made as those of the plaintiff are made, and completed by deliveries from the Atlanta storage warehouse in both interstate and intrastate commerce?" So much of § 92-3113, as is here applicable reads as follows:

"C. Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the State shall be taken to be such percentage of the total of such income apportionable to Georgia determined as follows:

"1. Tangible property ratio. The ratio of the tangible property, real, personal, and mixed, owned and used by the taxpayer in Georgia in connection with the trade or business during the income year to the total of such tangible property of the taxpayer owned and used in connection with the trade or business everywhere. Cash on hand or in bank, shares of stocks, notes, bonds, accounts receivable or other evidence of indebtedness, special privileges, franchises, patents, and good will; or property, the income from which is not taxable or is specifically allocated shall not be considered tangible property nor included in the apportionment.

"2. Manufacturing cost ratio. The ratio of the total cost of manufacturing, collecting, assembling, or processing within this State to the total cost of manufacturing, collecting, assembling, or processing everywhere. The term 'cost of manufacturing, collecting, assembling, or processing within this State and everywhere' as used herein shall be interpreted in a manner to conform as nearly as may be possible to the best accounting practice in the trade or business, unless, in the opinion of the revenue commission, the peculiar circumstances in any case justify a different treatment. This term shall be generally interpreted to include as elements of cost within this State the following:

"a. The total cost of all goods, materials, and supplies used in

manufacturing, assembling, or processing within this State regardless of where purchased.

"b. The total wages and salaries paid or incurred during the income year in this State in such manufacturing, assembling, or processing activities.

"c. The total overhead or manufacturing burden properly assignable according to good accounting practice to such manufacturing, assembling, or processing activities within this State including only such expenses as are allowable deductions for determining taxable net income as provided by part IX of this title.

"3. Sales ratio. The ratio of the total sales made through or by offices, agencies, or branches located in Georgia during the income year to the total net sales made everywhere during said' income year. The tangible property ratio, the manufacturing cost ratio, and the sales ratio being separately determined and the three percentages averaged."

We are dealing here with the levy of a net-income tax against a taxpayer who is engaged in a business extending over many States. The evident purpose of the act is to require the taxpayer to pay to the State of Georgia income tax on that portion of its business fairly attributable to its Georgia activities. The "sales ratio" of the taxing formula above-quoted is here brought in question. Do sales made in the manner alleged in the petition, for the purpose of this act, levying a net-income tax on a proportionate basis, amount to "sales made through or by offices, agencies, or branches located in Georgia?" There is no contention that the plaintiff in error does not "own property or do business in this State." What is done in this State? A stock of goods is kept in a warehouse in Georgia; orders for goods are received and approved at the office of the corporation in Baltimore, Maryland, and forwarded to this warehouse; the orders are filled by the person in charge of the warehouse, and actual delivery of the goods is made in Georgia—in the case of residents by actual delivery to them, and in the case of non-residents by delivery to the common carrier, which is tantamount to delivery to the purchaser. Since delivery is made in Georgia to both Georgia purchasers and non-resident purchasers, in so far as shipments from the Georgia warehouse are concerned, title passes in Georgia as to both classes of purchasers.

See Code, § 96-107; *Kehrer* v. *Stewart,* 117 *Ga.* 969 (44 S. E. 854) ; *Mann* v. *Glauber,* 96 *Ga.* 795 (22 S. E. 405).

By numerous decisions, this court is committed to the proposition that a corporation may not escape the payment of taxes on personal or tangible property located within the State of Georgia by maintaining a non-resident home office, and thereby creating the fiction of a non-resident tax situs for such property. We see no reason why the same reasoning as to the payment of income tax should not apply to a corporation doing business in many States; otherwise, the person or corporation thus engaged in business could split up its business activities so as to avoid paying its just share of the burden of income tax in all States.

We do not understand that there is any contention that a State cannot under any circumstances levy and collect a tax of the nature here in question. Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113 (41 Sup. Ct. 45, 65 L. ed. 165), and a number of other decisions clearly support such right. We hold that sales made in the manner described in this petition, both as to residents and non-residents of Georgia, in the sense used in this income-tax act, amounted to "sales made through or by offices, agencies, or branches located in Georgia."

■ The second question argued in the brief of the plaintiff in error is as follows: "If § 92-3113 of the Code, properly construed, does provide that sales made as those of the plaintiff are made shall be included as 'Georgia sales' in the sales-ratio factor of the formula of apportionment, does the act for that reason offend the due-process clause of the fourteenth amendment of the constitution of the United States or the commerce clause of the constitution of the United States, because the effect of the formula as so construed is to subject to taxation by the State property and business of the plaintiff carried on wholly in other States, or to burden interstate commerce?" The question here raised is whether or not the income-tax act as applied in the instant case had the effect of taxing the business of the taxpayer carried on wholly in other States, and thus became a burden on interstate commerce. If the State of Georgia had the authority to levy a fair income tax against the overall business of the taxpayer fairly proportionate to its Georgia activities, and if the formula here adopted was based upon business done in Georgia or sales made in Georgia—and we have thus

held—then, of course, the effect of the taxing formula was not to levy a tax on business of the plaintiff carried on wholly in other States, and we so hold.

■ The third question raised in the brief of the plaintiff in error is as follows: "If § 92-3113 of the Code, as amended, properly construed, requires that sales of plaintiff which are completed by shipments from the Atlanta warehouse to customers in other States be included as 'Georgia sales' in the sales-ratio factor of the apportionment formula, does the section, as so construed, offend the due-process clause of the fourteenth amendment or the commerce clause of the Federal constitution, for the reasons indicated in the foregoing paragraph?" We have held in this opinion that shipments made from the Georgia warehouse to non-residents of Georgia were, for the purposes of the statute now under consideration, upon the same basis as shipments to Georgia purchasers. In so far as the taxpayer in this case is concerned, identically the same acts were performed as to non-resident purchasers as were performed as to resident purchasers, the only difference being that in the case of non-resident purchasers the goods were carried by common carrier across State lines. This was not true in the case of resident purchasers. We think that this makes no difference in so far as the constitutional questions here raised are concerned.

American Steel & Wire Co. v. Speed, 192 U. S. 500 (24 Sup. Ct. 365, 48 L. ed. 538), holds in effect that a State is not precluded by the commerce clause of the Federal constitution from imposing a merchant's tax upon a non-resident manufacturing corporation which has selected a city of that State as a distributing point, and has secured a local transfer company to take charge of its products when shipped to that point, assort them, store them in a warehouse, and make delivery in the original packages to the customers of the manufacturer, either as expressly directed by it, or under general directions in favor of its recognized and approved customers, whose names were furnished to the transfer company, since, under such circumstances, the goods, when stored in the warehouse, were no longer in transit, but had reached their destination, and were held in the State for sale. "A State, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce, without contravening

466

the commerce clause of the Federal constitution, where there is no discrimination against interstate commerce either in the admeasurement of the tax or in the means adopted for enforcing it." U. S. Glue Co. v. Oak Creek, 247 U. S. 321 (38 Sup. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748). See also Underwood Typewriter Co. v. Chamberlain, supra, and International Harvester Co. v. Wisconsin Department of Taxation, 322 U. S. 435 (64 Sup. Ct. 1060, 88 L. ed. 1023). There are many cases laying down the same principle of law as discussed in the above-cited decisions.

In the instant case, it appears that the income-tax act in question simply levied a tax on the business of a corporation, and, in order to reach a fair and reasonable ratio, included in the computation, the net income derived from transactions in interstate commerce, but did not discriminate against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing the tax. Therefore we hold that the tax act in question did not amount to a burden on interstate commerce, or violate any constitutional provision under the questions raised by the plaintiff in error.

It follows that there was no error in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*