PARKE, DAVIS AND COMPANY *v.* CITY OF ATLANTA *et al.*

No. 15354.   January 17, 1946.

*Edgar Watkins Jr.* and *Allan Watkins,* for plaintiff.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, Hugh G. Head Jr., Ralph Williams, Eugene Cook, Attorney-General, Claude D. Shaw* and *R. A. McGraw, Assistant Attorneys-General,* for defendants.

CANDLER, Justice. (After stating the foregoing facts.)  The reasons prompting the trial judge to dismiss the amended petition on demurrer are not set out in his judgment or elsewhere in the record. However, the plaintiff in error lists four questions as being involved in the appeal, as follows: "Is. the declaratory judgment law applicable to tax controversies between municipal corporations and taxpayers? Are accounts receivable taxable at the ad valorem rate under Code Section 92-115 [The mentioned section being that number of the Supplement to the Annotated Code]? Is the assessed tax a burden on interstate commerce in violation of the commerce clause of the Constitution of the United States? Does the assessed tax deny plaintiff due process of law

and equal protection of the law, in violation of the 14th amendment to the Constitution of the United States and article 1 of the Constitution of Georgia?"

We consider first whether or not the accounts receivable as set out in the petition have a situs for taxation by the City of Atlanta. The recent case of *Parke, Davis & Co.* v. *Cook,* 198 *Ga.* 457 (31 S. E. 2d, 728, 156 A. L. R. 1360), involved facts identical with those in the present case insofar as the manner of handling the property owned or business conducted is concerned, although in the cited case the main question raised and decided related to income tax to the State of Georgia upon the formula method provided by the income tax act. Code, § 92-3113, as amended. In the mentioned decision it was held that, where a foreign corporation kept a stock of goods in a warehouse within the State, orders were received and approved outside the State, which were filled by delivering goods from the warehouse directly to residents of the State and to common carriers for delivery to non-resident purchasers, title passed in the State as to both classes of purchasers as respects computation of income tax. And in the opinion it was said: "By numerous decisions, this court is committed to the proposition that a corporation may not escape the payment of taxes on personal or tangible property located within the State of Georgia by maintaining a non-resident home office, and thereby creating a fiction of non-resident tax situs for such property." In several cases this court has upheld the right of a municipality to tax accounts receivable of a non-resident corporation engaged in business in this State where such accounts receivable arise out of the business conducted in this State. *Armour Packing Co.* v. *Savannah,* 115 *Ga.* 140 (41 S. E. 237); *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128); *Armour Packing Co.* v. *Clark,* 124 *Ga.* 369 (52 S. E. 145). Accounts receivable are taxable in this State if they are connected substantially with some business transacted in the State by the non-resident owner, notwithstanding that the orders taken by the non-resident owner for the merchandise sold in this State are filled, the shipments thereof made, the credit of customers passed upon, and the books of account kept, at a point without the State of Georgia. *Colgate-Palmolive-Peet Co.* v. *Davis,* 196 *Ga.* 681 (27 S. E. 2d, 326). We can see no reason for any difference between the con-

clusion reached in the decision of the case of *Parke, Davis & Co.* v. *Cook,* supra, holding the transaction there taxable for income, and the conclusion that ought to be reached here as to the taxable situs of the accounts receivable. The basic principles of taxable situs are the same. We hold that, insofar as the question of tax situs is concerned, the City of Atlanta had a right to assess the accounts receivable which the plaintiff in its petition sought to have declared otherwise.

■ It is insisted by the plaintiff in error that the accounts receivable described in its petition as sought to be taxed by the municipality are not taxable by such municipality under a proper construction of the Constitution of Georgia or of statutes relating to taxation of intangibles, but that, if taxable at all, the rate for intangibles should be applied. The pertinent provision of the Constitution of Georgia is paragraph 1 of section 2 of article 7, which is paragraph 3 of section 1 of article 7 as amended on August 7, 1945 (Code, Ann. Supp., § 2-5403), and reads as follows: "All taxes shall be levied and collected under general laws and for public purposes only. All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Classes of subjects for taxation of property shall consist of tangible property, and one or more classes of intangible personal property including money. The General Assembly shall have the power to classify property including money for taxation, and to adopt different rates and different methods for different classes of such property." Following the adoption of the classification portion of said constitutional provision (Ga. L. 1937, p. 39, ratified June 8, 1937), the legislature provided by an act (Ga. L. Ex. Sess., 1937-38, pp. 156 et seq.) for the taxation of intangibles, and this statute as amended is now contained in the Annotated Code Supplement as §§ 92-113 et seq. Section 92-113 gives definitions, among which is the following: " 'Intangible personal property' is defined for the purposes of this law as capital stock of all corporations, money, notes, bonds, accounts, or other credits, secured or unsecured, patent rights, copyrights, franchises, and all other classes and kinds of property defined by law as intangible personal property whether or not enumerated in this definition and whether or not similar to those classes enumerated." Section 92-114 reads: "Real property (including

leaseholds which are hereby classified as real property) and tangible personal property shall be taxed as now provided by law. All intangible personal property is hereby classified, in keeping with the constitutional amendment adopted in 1937." Section 92-115 provides: "Franchises and all shares of building and loan associations and all shares of banks or banking associations, including Federal Land Banks, together with all money capital in the hands of individual citizens of Georgia coming into competition with the business of national banks, and accounts receivable and all notes except those representing credits secured by real estate are hereby classified to be taxed as heretofore provided by law and shall not be subject to the provisions of the following sections of this law." (That is: §§ 92-116 to 92-159, 92-9946.) Section 92-116 taxes money at 10 cents on each $1000. Section 92-117 fixes a rate of $1.50 on each $1000 of all notes or other obligations insured by certain agencies up to $5000, and provides that the excess shall be taxed as provided in § 92-118. Section 92-117a fixes a rate of 50 cents upon each $1000 of loans held by a broker representing credits extended in connection with the purchase or sale of stocks, bonds, or other securities of like character held as collateral security. Section 92-117b fixes a rate of $1 upon each $1000 of all stocks of foreign and foreign-domesticated corporations with certain enumerated exceptions. Section 92-118 reads: "A property tax is also levied . . annually . . at the rate of $3 on each $1000 of the fair market value of all other intangible personal property as of the first day of January (than that subject to tax under sections 92-116 and 92-117), without deduction of any indebtedness or liability of the taxpayer: Provided, however, that this tax shall not apply to those classes of intangible personal property explicitly excluded under the terms of sections 92-114 and 92-115." Section 92-119 reads: "The taxes imposed herein shall be in lieu of all other State, county, municipal, and district property taxes on intangible personal property classified for taxation at the rates specified in sections 92-116 to 92-122."

We think that the provisions of that portion of the intangible tax act which appears as § 92-115 of the Annotated Code Supplement, stating that "accounts receivable and all notes except those representing credits secured by real estate are hereby classified to be taxed as heretofore provided by law and shall not be subject to the provisions of the following sections of this law

[Ann. Supp. §§ 92-116 to 92-159, 92-9946]" are clear and unambiguous and need no other construction than the words import. "To be taxed as heretofore provided by law," can only mean that "accounts receivable" are not to be taxed at the reduced rates of the specified intangibles set out in the various classifications, but they are to be taxed as accounts receivable were taxed previous to the passage of the intangible tax act, which was the uniform ad valorem rate. Including the word "accounts" in the definition of "intangible personal property" under the intangible tax act, does not necessarily mean a conflict in the terms of the act, where it so plainly appears that "accounts receivable" are specifically stated to be taxed as heretofore provided by law. It is not an unreasonable and unconstitutional classification for "accounts receivable" and other different classes of intangible personal property to be taxed at different rates. The amendment to the Constitution of Georgia, adopted June 8, 1937, and quoted above, authorizes the General Assembly to classify property for taxation, and to adopt different rates and different methods for different classes of such property. See par. III, section I, article VII of the rearrangement of the Constitution of Georgia as amended August 7, 1945. The action of the General Assembly in leaving "accounts receivable" and other enumerated kinds of property to be taxed as heretofore, and in placing separately enumerated classifications of property within the more favorably rated sphere of the intangible tax act, is not unreasonable or unconstitutional for any of the reasons urged in the briefs of the plaintiff in error.

■ If, under the facts of the case, a tax situs did exist in the municipality seeking to tax the accounts receivable, it would be immaterial whether they arose in interstate commerce, since the commerce clause (U. S. Const., art. 1, sec. 8, cl. 3) does not exempt either tangible or intangible property from a nondiscriminatory ad valorem tax by a municipality. Virginia *v.* Imperial Coal Sales Company, 293 U. S. 15 (55 Sup. Ct. 12, 79 L. ed. 171); *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495 (19 S. E. 2d, 396, 143 A. L. R. 343); *Parke, Davis & Co.* v. *Cook,* supra; *Colgate-Palmolive-Peet Co.* v. *Davis,* supra. Under the foregoing authorities there would be no burden upon interstate commerce, under the facts stated in the petition, for the accounts receivable to be taxed as sought by the municipality.

■ Where a non-resident corporation became the owner of accounts receivable arising out of business conducted in a municipality in this State, such credits had a tax situs in the municipality where such business was conducted, so that the enforcement of a tax upon the credits would not be contrary to the guaranty of the due process or equal protection of the law as expressed in the fourteenth amendment of the Constitution of the United States or paragraphs 2 and 3 of section 1 of article 1 of the Constitution of Georgia, notwithstanding that the credit of the customers may have been passed upon and the books of account kept by the corporation at a point without the State. *Colgate-Palmolive-Peet Co.* v. *Davis,* supra; *Suttles* v. *Northwestern Mutual Life Insurance Co.,* supra; *Parke, Davis & Co.* v. *Cook,* supra.

■ Having reached the conclusion that the plaintiff's contentions with respect to tax situs and liability are without merit, we need not deal with the other questions, since in any view of them, the petition as amended did not state a cause of action, and was properly dismissed on general demurrer.

*Judgment affirmed. All the Justices concur, except Head, J., disqualified.*