31745. TWENTIETH CENTURY-FOX FILM CORPORATION *v.* PHILLIPS, Revenue Commissioner.

Decided February 18, 1948.  Adhered to on Rehearing April 2, 1948.

*MacDougald, Troutman, Sams & Branch, William H. Schroder,* for plaintiff in error.

*Eugene Cook, Attorney-General, A. J. Hartley, Assistant Attorney-General, John A. Smith Jr.,* contra.

MacIntyre, P. J.  Twentieth Century-Fox Film Corporation, a New York corporation, doing part of its business and earning part of its income in Georgia, hereinafter referred to as the taxpayer, filed Georgia income-tax returns for the years 1941, 1942, and 1943.  The State Revenue Commissioner, hereinafter referred to as the commissioner, determined that a deficiency was due for each of those years, and, after overruling the protest of the taxpayer, issued income-tax fi. fas. for the deficiencies assessed.  The executions were levied upon the property of the taxpayer, and the taxpayer filed affidavits of illegality to the executions and levies.  The commissioner filed a general demurrer to the affidavits of illegality; this demurrer was sustained in part, and the taxpayer excepted pendente lite.  There was no question of fact, and the parties entered into a stipulation as to the correctness of amount by which the executions should proceed.  The trial judge then ordered the executions to proceed in the amount agreed upon, and the taxpayer excepted.

The affidavits of illegality allege in substance: The taxpayer is a corporation organized under the laws of the State of New York and has its principal place of business in New York City. During the years in question it was engaged in the production of motion pictures in California and the distribution of such pictures throughout the United States. Its administrative offices were in New York City, and one of its many branch offices was located in Atlanta, Georgia. Its agents from the Atlanta office solicit exhibitors of motion pictures in Georgia, Florida, Tennessee, and Alabama for offers to lease or rent motion-picture films to be produced by the taxpayer and also exhibition rights. Such offers were submitted on forms supplied by the taxpayer by its agents at the Atlanta office and then forwarded to New York, where they were either accepted or rejected. If accepted, such acceptance was noted and two copies returned to the Atlanta office. As the pictures were produced, the negatives were forwarded to New York for development, where positive prints to be supplied to the exhibitors were produced, and from time to time shipped to Atlanta and forwarded by that office to the exhibitors who had purchased the rights of exhibition within and without Georgia. The routing of the films to the exhibitors was one of the principal duties of the Atlanta office. All bills for film rents were rendered by the Atlanta office, and payments by the exhibitors made to the Atlanta office. After exhibition of the film had been completed, it was returned to the New York office or sent to some other exchange outside of Georgia for further distribution. No motion pictures are made or produced within the State, and the only activities carried on within the State by the taxpayer are in connection with the distribution or licensing of motion-picture films which had been elsewhere produced. The income received by the taxpayer from exhibitors in Georgia and the other three States constitutes license fees for the use of copyrighted articles and rentals from the leasing of advertising matter, which is furnished to exhibitors for use in connection with the motion pictures licensed. The affidavit further alleges that the taxpayer makes no sales of its films or advertising matter of any kind within or without the State of Georgia.

The taxpayer contends: first, that the commissioner by his demurrer admitted that the taxpayer's activities were not sales;

second, that the word "sales" as used in Code (Ann.) § 92-3113 (c) does not include within its meaning the marketing of motion pictures in the manner alleged in the affidavits of illegality; third, that even if the activities are held to be sales within the meaning of the statute, the proceeds received from such marketing of such pictures outside of the State, but handled and controlled through the office located in Georgia, are not to be included in the sales ratio of the three-factor ratio set forth in Code (Ann.) § 92-3113; and fourth, that, if the proceeds are included in the three-factor ratio as sales, the result will be a tax on gross income, which was not the intent of the legislature.

■ The taxpayer contends that the commissioner, by his demurrer, admitted that the taxpayer's activities were not sales. In his affidavits of illegality the taxpayer stated: "The taxpayer makes no sales of its films or advertising matter of any kind within or without the State of Georgia."

A demurrer admits only facts and not the legal conclusions drawn therefrom by the pleader. *Lee* v. *Atlanta,* 197 *Ga.* 518 (29 S. E. 2d, 774). We are of the opinion that such allegation in the affidavits of illegality of the taxpayer is a mere conclusion drawn from the evidentiary facts alleged, and the demurrer raises the question whether the conclusion is good in law.

■ It is contended by the taxpayer that its business activities as outlined above do not constitute sales of any kind either within or without the State of Georgia, but the business income of the taxpayer is derived from leasing or renting motion-picture films to the exhibitors; and, therefore, the commissioner erroneously applied the three-fact ratio in determining the taxable income of the taxpayer for the years in question, because such leasing was not within the meaning of the word "sales" in Code (Ann.) § 92-3113 (c).

Code (Ann.) § 92-3113 provides: "The tax imposed by this law shall apply to the entire net income, as herein defined, received by every domestic corporation and every foreign corporation owning property or doing business in this State: If the entire business income of the corporation is derived from property owned or business done in the State, the tax shall be imposed on the entire business income, but if the business income of the corporation is derived in part from property owned or business done

in the State and in part from the property owned or business done without the State, the tax shall be imposed only on the portion of the business income reasonably apportioned to the property owned and business done within the State, to be determined as follows:   [Here follow, as exceptions from net income apportionable to business done in the State, the income from property held for investment and from property not held in connection with the business itself.]   .   .   (3)   Net income of the above classes having been separately allocated and deducted, as above provided, the remainder of the net business income shall be apportioned as follows:   Three Factor Ratio   [Here follow the tangible-property ratio and the compensation-for-services ratio.]   .   .   (c) Sales Ratio.—The percentage which the sales made within this State and through, from or by offices, agencies, branches or stores within this State is to the total sales wherever made.   For the purpose of this section, in determining the amount of sales made within Georgia, there shall be excluded therefrom, sales negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with or sent out from premises owned or rented outside the State by the taxpayer or by his agents or agencies for the transaction of business, and sales otherwise determined by the Commissioner to be attributable to the business conducted on such premises."

"While revenue statutes are to be construed strictly and so as to resolve doubts in favor of the taxpayer   .   .   and all State statutes are generally to be construed so as to apply to words their 'ordinary signification'   .   .   ;   yet the courts in their interpretation of all statutes must look to the entire act and the intention of the legislature as thus manifested."   *Montag Bros.* v. *State Revenue Commission,* 50 *Ga. App.* 660, 665 (179 S. E. 563).

"While, as a general rule, tax laws must be strictly construed as to their operation upon those to be thereby affected, it will not do in every instance to confine words to their literal and ordinary signification.   .   .   'Statutes relating to taxation   .   .   are to be so construed as to carry into effect the obvious intent of the legislature, rather than to defeat that intent by a too strict adherence to the letter'."   *Singer Manufacturing Co.* v. *Wright,* 97 *Ga.* 114 121 (25 S. E. 249, 35 L. R. A. 497).   .

" 'Statutes levying taxes, excises, or duties upon the citizens of a State are to be construed strictly against the governmental authorities and liberally in favor of the citizens.' . . . But there are other general rules which must be followed in the construction of statutes. It is declared that 'the ordinary signification shall be applied to all words, except words of art, or words connected with a particular trade or subject-matter.' Code, § 102-102. It has been ruled that every part of a statute must be viewed in connection with the whole, so as to harmonize all its parts if practicable, and give a sensible and intelligent effect to each, for it is not to be presumed that the legislature intended any part of the statute to be without meaning . . ; that the courts in construing a statute can neither add to nor take away from it . . ; that where a general term in one part of a statute is inconsistent with a more specific provision in another part, the latter must govern . . ; and that judicial interpretation is excluded where none is needed in giving effect to plain and unambiguous legislative language. . . An exception to the latter rule exists where, in the light of the old law, the evil to be corrected, and the end to be attained by the remedy, the manifest legislative intent and purpose would be defeated by a too literal construction of words." *State Revenue Commission* v. *Alexander*, 54 *Ga. App.* 295, 296 (187 S. E. 707).

"An exception to the general rule just stated is presented by the use of words the meaning of which in general acceptation is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. Courts may construe the language employed in the act in connection with the context, and ascertain the legislative intent as derived from the old law, the evil, and the remedy, and will not defeat the intention and purpose of the General Assembly by giving effect to words which would render the purpose of the General Assembly in the passage of the enactment futile, unenforceable, or ineffectual." *Gazan* v. *Heery*, 183 *Ga.* 30 (2) (187 S. E. 371).

"The true genius of the law, whatever may be thought to the contrary, is to quibble as little as possible on words, and go directly to the substance. It is true that, for the sake of certainty, it is necessary in construing statutes to be somewhat critical in the examination of language, but when the object and

purpose of the law are free from all doubt, to sacrifice them to avoid slight verbal difficulties would be to bring back the scholastic trifling of the middle ages." *Humphrey* v. *Copeland,* 54 *Ga.* 543, 545.

From the enactment of the first State income tax in 1929, through the amendments and changes in the law in 1931, 1935, 1937, and 1941, the legislature has expressed the intent that a nonresident corporation, having a place of business in Georgia, should be taxed on the portion of its net income reasonably apportioned to the property owned and business done in Georgia. Each act, except that of 1929, has expressed this intent in precisely the same words, now found in § 92-3113, as follows: "The tax shall be imposed only on the portion of the business income reasonably apportioned to the property owned and business done within the State."

Throughout the history of Code § 92-3113, one of the primary factors in determining the proportion of the net income properly to be allocated to Georgia has been the amount of business within the State. While the manner of determining the business to be allocated to the State and the wording of the act and its form have been changed from time to time, the sales determinant of income has remained in the act at all times since 1937.

It was pointed out in *Parke, Davis & Co.* v. *Cook,* 198 *Ga.* 457, (31 S. E. 2d, 728, 156 A. L. R. 1360), that the evident purpose of the act is to require the taxpayer to pay to the State of Georgia income tax on that portion of its business fairly attributable to its Georgia activities.

The intention of the legislature is expressed further as follows in Code (Ann.) § 92-3113: "but if the business income of the corporation is derived in part from property owned or business done in the State and in part from property owned or business done without the State, the tax shall be imposed only on the portion of the business income *reasonably attributable to* the property owned and *business done within the State,* to be determined as follows: (1) [Interest received from bonds, and rentals from real estate, held solely for investment and not used in connection with the business is not subject to apportionment with certain limited exceptions.] (2) Gains from the sale of tangible or intangible property *not held,* owned, or used in connection with the trade or

business of the corporation *nor for sale in the regular course of business* shall be allocated to the State if the property sold is real or tangible personal property situated in the State or intangible property not connected with the business in the State. Otherwise such gains shall be allocated outside the State. [Thus excepting this class of income from apportionment.] (3) Net income of the above classes having been *separately allocated and deducted,* as above provided, the *remainder* of the net business income . . shall be . . apportioned as follows: [Three Factor Ratio] . ." [Brackets and italics ours.] Having thus excepted these classes of income from apportionment, the legislature · clearly manifests the intention that the remainder of net income is subject to apportionment; and that it did not intend to define or limit the levy of the tax on that part which is subject to apportionment; but rather its purpose in using the word "sales" in § 92-3113 (c) was to provide an additional method for apportioning to the State the business income of the corporation reasonably attributable to the property owned or business done within the State, namely the disposition in the regular course of business of tangible or intangible property held for sale in the regular course of business.

In general there are three ways of marketing a motion picture: (1) the negative can be sold to some corporation, which will in turn arrange for the marketing of the films; or (2) the owner of the negative can directly arrange for the exhibition of the picture in theatres; or (3) the exhibition of the picture can be procured by the sale of territorial rights—that is to say, of the right to exhibit the picture in certain specified territory. Marchetti, Law of the Stage, Screen, and Radio, p. 240.

The taxpayer not only owns the film, but it also owns the copyright, and no one can exhibit the film without its consent. It goes without saying that the right of mere possession of the film by the exhibitor would be valueless without the additional right of exhibition. A copy of the form contract used by the taxpayer is not made a part of the record, but it is alleged that the agents of the taxpayer offer to lease or rent motion-picture film to be produced by the taxpayer and exhibition rights in connection therewith. "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against

the pleader; and if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *McEntire* v. *Pangle*, 197 *Ga.* 414 (1) (29 S. E. 2d, 503). The contract between the taxpayer and the exhibitors, whether it be termed a lease, rental, or otherwise, may be fairly inferred in any event to be essentially the marketing, or distribution for public consumption, of the film, which is the primary business of the taxpayer.

It is the opinion of this court that, in using the word "sales" in Code (Ann.) § 92-3113 (c), the legislature did not intend to define or limit the levy of the tax, but the evident purpose of such section is to provide methods of calculation for apportioning to the State the business income of the corporation reasonably attributable to the property owned and business done within the State; and further that the legislature, in using the word "sales", intended to include within its meaning and application the marketing, or distribution for public consumption, of the merchandise of a business, held, owned, used, or sold in connection with the regular course of business in this State and thereby subject to the taxable jurisdiction of this State for however brief period of time, and not excepted from the apportionable part of the income of the business as gains from property held for investment or from property not held, owned, or used in connection with the regular course of business, by Code (Ann.) § 92-3113 (1, 2), whether the marketing or distribution for public consumption be termed a sale, a lease, a rental, or otherwise; and that to hold otherwise would contravene the manifest intent of the legislature clearly expressed by the history and entirety of the act.

■ The taxpayer further contends that, even if those transactions referred to by the taxpayer as "rentals" are construed to be "sales", the income from property located in Alabama, Tennessee, and Florida should not be included in the three-factor ratio. The taxpayer points out that it is not the purpose and intent of the act to tax the net income of a domestic corporation derived from property owned outside the State of Georgia.

"In Purnell *v.* Page, 133 N. C. 125, 129 (45 S. E. 534), it is said: 'The tax levied on income is not a property tax, but is a percentage laid on the amount which a man receives, irrespective

of whether he spends it, wastes it, or invests it.' " *Thompson* v. *Atlantic Coast Line R. Co.*, 200 *Ga.* 857, 863 (38 S. E. 2d, 774) "In New York ex rel Cohn *v.* Graves, 300 U. S. 308, 313 (57 Sup. Ct. 466, 81 L. ed. 666, 108 A. L. R. 721), it was said: 'The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the State to the recipient of the income in his person, in his right to receive the income, and in his enjoyment of it when received.' " *Davis* v. *Penn Mutual Life Ins. Co.*, 198 *Ga.* 550, 555 (32 S. E. 2d, 180, 160 A. L. R. 778).

"The taxing powers of a State with regard to its own residents and citizens and nonresidents are 'necessarily limited to subjects within the jurisdiction of the State. These subjects are person, property, and business. . . Unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction. . . Just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the State, or their occupations carried on therein; enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders.' . . While as to nonresident individuals and foreign corporations the power of the State to tax incomes on property or business does not extend to sources where both the property and the business producing the income are located outside the State, this restriction does not cover resident individuals and domestic corporations; and as to them it has been generally held that their income is taxable, whether it be derived from sources within or without the State. . . The defendant corporation in this case, after being organized under the laws of Delaware, was domesticated under the laws of Georgia, and under our statutes thereby became subject to the same 'obligations, duties, liabilities, and disabilities as if originally created under the laws of Georgia.' . . Whether or not in becoming thus domesticated it subjected itself to the same rules of taxation as control corporations created in this State, and could claim, as a nonresident corporation, other taxation rights and privileges under the Federal Con-

stitution, no such constitutional question properly arises in this case. Section 4 of the State income-tax act of 1931 . . , here involved, imposes the same rules and restrictions on resident as on nonresident corporations. Nor does the measurement of the tax or the means of enforcement discriminate against interstate commerce; and therefore the fact that sources of the tax incidentally involve interstate-commerce transactions in computing the taxable net income of the taxpayer does not contravene the interstate-commerce clause in the Federal Constitution." *Montag Bros.* v. *State Revenue Commission*, 50 *Ga. App.* 660, 663 (supra).

While the taxpayer in the present instance has not been domesticated in Georgia, it nevertheless has a branch office in this State, doing business in this State and controlling business in three other States. The quotation above points out the lack of discrimination in taxing resident and nonresident corporations, and also the fact that the constitutional question is not here involved. With the exception of the portion relative to the State's authority to tax a domesticated corporation, it is in all respects on all-fours with the situation at hand.

The record discloses that the taxpayer solicited all contracts with the exhibitors from the Atlanta office, and received all revenue from the contracts in the Atlanta office. It discloses also that the film and advertising matter, in the first instance at least, are distributed from the Atlanta office, and that the taxpayer generally controls the use of the film and the forwarding thereof from one exhibitor to another outside the State of Georgia from the Atlanta office, and the film and advertising matter are returned to the Atlanta office for further disposition when they have completed their out-of-State circuit. Nor is there any tax imposed on the income from the rentals of property in another State. Each of the fractions of the three-factor ratio imposes a restriction and a reduction on the other. If all the sales business of a corporation is done within the State, but very little or none of its tangible property is in the State, the sales fraction is reduced to the advantage of the taxpayer by the application to it of the small or zero fraction of the tangible-property ratio when it is averaged in. In the present case, the film and advertising matter which is leased out of the State should not be

included in the tangible-property ratio, but only the film and advertising matter within the State is included; thereby the tangible-property ratio reduces the sales ratio to include only the proper part of the income due to business done in and apportionable to the State. The effect is to exclude from the income apportionable to the business done in the State—that is, the marketing or distribution for public consumption of the business products of the taxpayer held in this State, though briefly, in the course of that business—that part of the income due to the actual rental of property in other States. There is no tax on rentals of property in other States, but only on the income from business done in the State.

We are of the opinion that the marketing or distribution for public consumption of commodities held in Georgia in the regular course of a business transacted in Georgia are sales within the meaning of the statute, and that the sales made in and out of Georgia were made through, from, or by the office of the taxpayer located in Atlanta, Georgia. We reiterate that the evident purpose of the act is to require the taxpayer to pay to the State of Georgia income tax on that portion of its business which is fairly attributable to its Georgia activities, and that to reach any other conclusion would defeat the clear purpose and intent of the legislature. *Parke, Davis & Co.* v. *Cook,* supra. See *Montag Bros.* v. *State Revenue Commission,* supra; Maytag Co. *v.* Commissioner of Taxation 218 Minn. 460 (17 N. W. 2d 37); 167 A. L. R. 943.

■ The taxpayer contends that, by the application of the sales factor in the three-factor ratio, the tax thereby becomes a tax on gross income, rather than on net income, which was not the intent of the legislature. This contention is without merit for at least two reasons. First, the legislature has set up the three-factor ratio as a method for determining what proportion of the taxpayer's total net income is apportionable to its Georgia activities. The factors are the proportion of tangible property used in the business in Georgia to the tangible property used in the business wherever located; the proportion of compensation for services paid in this State to the compensation for services wherever paid; and the proportion of the sales of the business attributable to Georgia activities to the sales of the business

wherever made. When these three fractions are obtained, they are then averaged and applied to the total net income. They are not applied to the gross income, but to the net income resulting after all proper deductions are made from gross income. The tax factor of five and one-half percent is then applied to the resulting proportion of the net income attributable to Georgia activities. And second, as has been explained at length previously, each of the factors of the three-factor ratio imposes a reduction on the other, so that only the part of the net income attributable to Georgia activities is subject to the final tax of five and one-half percent. It may also be said that the three-factor ratio set up by the legislature is reasonably adapted to its purpose, and clearly its effect is, to tax only the net income properly apportionable to business done in the State of Georgia.

The trial judge did not err in sustaining so much of the commissioner's demurrer to the affidavits of illegality of the taxpayer as is here in issue.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*