114 N.J. Super. 156 (1971)
275 A.2d 447
THE J.B. WILLIAMS CO., INC. (SUCCESSOR TO LANDERS, FRARY & CLARK), PETITIONER-APPELLANT,
v.
SIDNEY GLASER, ACTING DIRECTOR OF DIVISION OF TAXATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1971.
Decided March 18, 1971.
*157 Before Judges SULLIVAN, COLLESTER and LABRECQUE.
Mr. John M. Newman argued the cause for appellants (Messrs. Porzio, Bromberg & Newman, attorneys).
*158 Mr. Alfred L. Nardelli, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Petitioner J.B. Williams Co., Inc., as successor to Landers, Frary & Clark (the taxpayer), appeals from a decision of the Division of Tax Appeals affirming the Corporation Tax Bureau's assessment of deficiencies against Landers, Frary & Clark for the years 1962, 1963 and 1964, under and pursuant to the New Jersey Corporation Business Tax Act (N.J.S.A. 54:10A-1 et seq.).
The facts were stipulated as follows:
(1) The J.B. Williams Company, Inc. is the successor corporation to Landers, Frary & Clark due to a statutory merger on May 31, 1965. A copy of the certificate of merger is attached hereto as Exhibit A. [Exhibit omitted]
(2) Landers, Frary & Clark (referred to herein as Landers) was up to May 31, 1965, a foreign corporation duly organized and existing under the laws of the State of Connecticut with its principal office and place of business located in New Britain, Connecticut.
(3) Landers' registered agent in the State of New Jersey during the years in question was Seymour Cipnick, 290 Jelliff Avenue, Newark, New Jersey.
(4) Landers engaged in the business of manufacturing and selling small electrical appliances. Manufacturing facilities were maintained in New Britain, Connecticut; Thomaston, Connecticut and Fort Smith, Arkansas. In addition, Landers maintained sales offices and employed salesmen in various parts of the United States.
(5) Landers employed Wheeling Transportation, Inc., 1235 Central Avenue, Hillside, New Jersey for the temporary storage pending sale of some of its products in Wheeling's public warehouse located in Port Newark.
(6) Landers management, general business office, accounting functions, order receipt and acceptance, billing and maintenance of accounts receivable records were conducted at its principal place of business within the State of Connecticut.
(7) The following table shows petitioners' activity in New Jersey.

 1962 1963 1964
Receipts where merchandise
was shipped from New
Jersey warehouse to New
Jersey customers $ 2,016,618 $ 983,982 $ 912,943
 ___________ ___________ __________

*159
Receipts where merchandise
was shipped
from New Jersey
warehouse to customers
located outside of New
Jersey $38,315,747 $31,815,406 $21,910,640
 ___________ ___________ ___________
Total receipts
of company $44,851,227 $43,138,593 $32,367,914
 ___________ ___________ ___________

(8) Landers owned no property located within New Jersey other than the merchandise stored in the public warehouse.
(9) Landers' activity within New Jersey consisted of the storage of inventory in the Wheeling public warehouse and the shipment of said inventory to customers by common carrier.
The taxpayer's return for 1962 recited that it had a warehouse and office in this State. Those for 1963 and 1964 made mention only of a warehouse.
The Corporation Tax Bureau accepted the returns as filed with the exception of the allocation of accounts receivable. In its return the taxpayer had included as a New Jersey asset includable in the allocation factor only those accounts receivable attributable to shipments from the New Jersey warehouse to customers located within the State. The Bureau assessed the tax on the basis of all the products shipped from the New Jersey warehouse, regardless of destination.
N.J.S.A. 54:10A-2 authorizes the assessment of an annual franchise tax to be paid by each corporate taxpayer. N.J.S.A. 54:10A-5(b)[1] requires that the tax be computed on "that proportion of its entire net worth as the average value of its total assets in this State during the period covered by its report is to the average value of its assets everywhere during such period (for the purpose of which there shall be included as within this State * * * the entire amount of the intangible personal property of foreign corporations as would have a business situs within this State for the purpose of a property tax) multiplied by the following rates *160 * * *." (Emphasis added). To implement N.J.S.A. 54:10A-5(b) the Division promulgated Regulation 16:10-4.350(c)(2), which provided that accounts receivable of a corporation were allocable to New Jersey "(2) when resulting from sales from a stock of goods located or maintained in this State."
Under the cited statute, if, as here, the corporation maintained a regular place of business outside of the State, it could, for the tax years in question, calculate its net worth allocable to New Jersey on the basis of the greater of two allocation formulae, one of which was the "total assets formula" contained in N.J.S.A. 54:10A-5(b) above. That formula was arrived at by dividing the total assets in New Jersey by the total assets everywhere. The sole question here is whether the taxpayer was required to include as New Jersey assets that portion of its accounts receivable attributable to sales of goods which were shipped from its warehouse in New Jersey to customers outside the State.
The main thrust of the taxpayer's argument is directed to the contention that the Director's regulation is at variance with the statute, which requires that only personal property having a "business situs" within the State be included in the allocation. It contends that the accounts receivable in question did not have a business situs in New Jersey and, alternatively, that the regulation is unconstitutional.
Initially we note that N.J.S.A. 54:10A-5 was first enacted in 1945 and that although the Division of Taxation did not publish its Regulation 16:10-4.350(c)(2) until January 1, 1959, the Corporation Tax Bureau had included the substance of it as part of the instructions printed on its tax return forms and had construed the statute in the manner here challenged since its enactment. Such a continuous practical interpretation of a statute by an administrative agency over a period of years without interference by the Legislature is evidence of its conformity with the legislative intention. Pringle v. N.J. Dept. of Civil Service, *161 45 N.J. 329, 333 (1965); Bello v. Comm'r of Dept. of Labor and Industry, 56 N.J. 41, 48 (1970).
Wholly aside, we see no inconsistency between the regulation and the statute.
The taxpayer urges that the statute was intended to apply, at most, only to intangible personal property actually managed and controlled in New Jersey. We do not so read it. It broadly provides for taxation of all intangibles which acquire a "business situs" in New Jersey. It is well established that accounts receivable and other intangible personal property may acquire a situs for purposes of taxation at some place other than the technical domicile of the owner. Determination of whether intangibles have acquired such a business situs frequently depends upon whether or not they are integral parts of the business conducted by their owner in the State. Newark Fire Ins. Co. v. State Bd. of Tax Appeals, 307 U.S. 313, 319, 59 S.Ct. 918, 83 L.Ed. 1312 (1939); First Bank Stock Corp. v. Minnesota, 301 U.S. 234, 237, 57 S.Ct. 677, 81 L.Ed. 1061 (1937); Household Finance Corp. v. State Bd. of Tax Appeals, 119 N.J.L. 230, 232 (Sup. Ct. 1937).
In finding that the accounts receivable had a situs here, the judge of the Division of Tax Appeals determined that the tangible personal property of the petitioner located within this State was the true subject matter of its business, and that the transportation of such subject matter, its billing and the resulting accounts receivable were all closely interwoven and linked together.
Here the taxpayer was confronted with the presumption of correctness which attached to the finding of the Division, and carried the burden of establishing that the accounts receivable in question did not acquire a situs in New Jersey. F.W. Woolworth Co. v. Director of Div. of Tax., 45 N.J. 466, 482 (1965).
We conclude that the stipulated facts afforded ample evidentiary support for a finding that the taxpayer's accounts receivable had become an integral part of the business *162 conducted by it in New Jersey, and therefore were includable in the statutory formula. Parke, Davis & Co. v. Atlanta, 200 Ga. 296, 36 S.E.2d 773, 163 A.L.R. 976 (Sup. Ct. 1946). They demonstrated that its business operation in New Jersey was a substantial part of its overall business, i.e., 89% in 1962, 76% in 1963 and 70% in 1964. Under its method of doing business, New Jersey was used as a storage and assembly point for a substantial portion of its inventory. The goods remained in New Jersey until shipped out pursuant to orders from customers. It is reasonable to assume that as goods were shipped out other goods were shipped in to replace them. New Jersey's highways were used in transporting the goods to the warehouse and in thereafter transporting them to their ultimate destination within or without the State. While the goods remained here they enjoyed the benefits of New Jersey's laws, including N.J.S.A. 54:4-3.20 which exempted them from tangible personal property taxes while stored in a public warehouse, and the protection of its law enforcement agencies.
In Parke, Davis & Co. v. Atlanta, supra, the taxpayer was a Michigan corporation with general sales offices in Michigan. It had a branch office in Maryland from which sales were made to customers in Georgia and other southeastern states. Although the taxpayer sold all of its products through salesmen, all orders were subject to acceptance at its sales office in Maryland. When an order was accepted a shipment was made to the purchaser from the most convenient storage warehouse. One such warehouse was located in Atlanta, Georgia. The stockkeeper in charge of the Atlanta warehouse had no authority to accept orders for goods or make collections, and did not do so. All customer accounts receivable were kept and taxed in Michigan at 1/10% of their value. The taxpayer had neither sales offices nor sales managers in Georgia. Upon such a state of facts the Georgia Supreme Court held that the accounts receivable which grew out of the shipments delivered from the Atlanta warehouse were, regardless of their delivery destination, *163 taxable in Georgia as being connected substantially with some business transacted in that state by the taxpayer. While in some respects the facts in Parke, Davis differ from those here present, i.e., the warehouse was owned by the taxpayer and shipments therefrom did not involve such a substantial portion of the taxpayer's business as here, we find the principle enunciated there to be equally applicable to the stipulated facts here.
We find no merit to the taxpayer's challenge to the constitutionality of either N.J.S.A. 54:10A-5(b) or Regulation 16:10-4.350(c)(2). A similar point was raised in Parke, Davis & Co. v. Atlanta, supra, where the court held:
[T]he enforcement of a tax upon the credits would not be contrary to the guaranty of the due process [clause] or equal protection of the law as expressed in the fourteenth amendment of the Constitution of the United States or paragraphs 2 and 3 of section 1, of article 1 of the Constitution of Georgia, notwithstanding that the credit of the customers may have been passed upon and the books of account kept by the corporation at a point without the state. [36 S.E.2d at 780.]
We do not read Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936), as holding, as defendant contends, that "intangible properties must be actually managed and controlled within the State of New Jersey to make them eligible for taxation."
Wholly aside, the issue before us is not whether the taxpayer is amenable to payment of the corporate business tax. It has filed its return and paid what it conceives to be the amount due from it under the statute. In its return for each year it also impliedly conceded that its goods stored in New Jersey should be allocated as New Jersey assets for purposes of the franchise tax. On the issue of constitutionality the distinction between accounts receivable derived from the sale of goods stored in New Jersey to New Jersey customers, and those derived from sales to customers outside the State, escapes us. The goods were *164 not in transit; they had come to rest and were awaiting sale and shipment to customers  wherever they might be.
We find no merit to the remaining points raised.
Affirmed.
NOTES
[1] Section (b) was later repealed by L. 1968, c. 250, § 2, effective August 16, 1968.