## S90A1658. CUNNINGHAM v. THE STATE.
### (400 SE2d 916)

CLARKE, Chief Justice.

Appellant was charged with violation of OCGA § 40-1-4 in that he operated a motor vehicle knowing that it bore a bumper sticker containing the words "shit happens." Appellant's pretrial motion challenging the constitutionality of the statute was denied. He was convicted by a jury and fined $100. His motion for new trial was denied, and he appeals. We find the statute unconstitutional.

OCGA § 40-1-4 provides as follows:

No person owning, operating, or using a motor vehicle in this state shall knowingly affix or attach to any part of such motor vehicle any sticker, decal, emblem, or other device containing profane or lewd words describing sexual acts, excretory functions, or parts of the human body.

Appellant appeals his conviction on the grounds that the statute is unconstitutional in that it is overbroad and vague and is violative of the rights of free speech, press, and expression guaranteed under the United States and Georgia constitutions. He also contends that there was insufficient evidence to sustain a conviction under the statute.

Before considering the validity of the statute in question, an examination of the development of the law on this subject is appropriate. We begin our analysis with a principle that: Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth

Amendment from invasion by state action. *Lovell v. Griffin*, 303 U. S. 444, 450 (58 SC 666, 82 LE 949) (1938); *Chaplinsky v. New Hampshire*, 315 U. S. 568, 571-572 (62 SC 766, 86 LE 1031) (1942).

While freedom of expression is one of the most cherished rights established by our Constitution, it is not absolute. In *Schenck v. United States*, 249 U. S. 47, 52 (39 SC 247, 63 LE 470) (1919), Justice Holmes formulated the "clear and present danger" exception to freedom of expression: "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." Since *Schenck* the Court has found that the curtailment of certain categories of speech does not raise constitutional problems provided the statutes regulating them are narrowly drawn. Among these categories are "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky*, supra at 572. As the Court explained:

> It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

Id. The profane, libelous, lewd, obscene, and fighting words referred to in *Chaplinsky* have in common the characteristics of injuring or offending a particular audience and tending to provoke a retaliatory response. See generally Bruce, Prostitution and Obscenity: A Comment upon the Attorney General's Report on Pornography, 1987 Duke L.J. 123 (1987). The justification for regulating profane, libelous, lewd, and fighting words is to preserve the peace in society. See generally Annotation, Laws Prohibiting Profanity, 5 ALR4th 956.

The peace of society is not endangered by the profane or lewd word which is not directed at a particular audience. In *Cohen v. California*, 403 U. S. 15 (91 SC 1780, 29 LE2d 284) (1971), the United States Supreme Court considered the constitutionality of a criminal conviction for wearing a jacket bearing the legend "Fuck the Draft." The appellant was convicted under a statute which prohibited maliciously and wilfully disturbing the peace by offensive conduct. The Court observed that the case did not involve one of the exceptional circumstances in which the government may "deal more comprehensively with certain forms of individual expression simply upon a showing that such a form was employed," these exceptions being obscene speech, "fighting words" or "distasteful expression thrust upon an unwilling or unsuspecting audience." Id. at 20-21. The Court held:

> It is . . . our judgment that, absent a more particularized and compelling reason for its actions, the State may not, consistently with the First and Fourteenth Amendments, make the simple public display here involved of this single four-letter expletive a criminal offense.

Id. at 26.

Beginning with the seminal opinion of *Roth v. United States*, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) (1957), the Court treated the category of obscene speech differently from the other categories of speech which are not entitled to constitutional protection. The refinement of the *Roth* standard, set forth in *Miller v. California*, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973), is the standard followed today. As the Court stated in *Cohen*, supra, "[w]hatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic. *Roth v. United States*, 354 U. S. 476 (1957)." 403 U. S. at 20.

Although the Court arguably retreated from the *Cohen* opinion in two later cases regarding indecent speech, *Federal Communications Comm. v. Pacifica Foundation*, 438 U. S. 726 (98 SC 3026, 57 LE2d 1073) (1978), and *Bethel School District v. Fraser*, 478 U. S. 675 (106 SC 3159, 92 LE2d 549) (1986), both of these cases can be distinguished. The most important distinction is the absence of criminal sanctions. Both cases involved narrow fact situations (an afternoon radio broadcast and a school assembly) involving an audience which included minors. In *Federal Communications Comm. v. Pacifica Foundation*, supra, the plurality upheld the F.C.C.'s regulating an afternoon radio broadcast containing repeated "indecent" although not obscene words. 438 U. S. at 729. In *Bethel School District v. Fraser*, the Court upheld the suspension of a student who made a nominating speech containing "elaborate graphic, and explicit sexual metaphor." 106 SC at 3162. Neither of these cases involved the imposition of *criminal* sanctions.

Although both the *Pacifica Foundation* and *Fraser,* supra, cases are distinguishable from *Cohen*, supra, they do represent a departure from some of the essential reasoning of *Cohen* and perhaps a weakening of the notion that obscene speech stands in a category by itself vis à vis the First Amendment. See generally Cohen, A Look Back at *Cohen v. California*, 34 U.C.L.A. L. Rev. 1595, 1607-14 (1987). *Pacifica Foundation*, which involved a George Carlin monologue satirizing society's attitude towards four-letter words, represented a further departure from *Cohen*. In this case the Court, emphasizing the fact that the radio broadcast has always received the least First Amendment protection of any form of communication, affirmed the FCC's power to regulate even where the use of the words was part of the satire. In

other words, the regulation of content as well as form was permitted.

For our purposes, the United States Supreme Court's decision in *Erznoznik v. City of Jacksonville*, 422 U. S. 205 (95 SC 2268, 45 LE2d 125) (1975), is closely analogous to the present case. In *Erznoznik* the Court considered a statute which banned any movie, slide, or exhibit visible from any public street or public place which showed bare human buttocks, bare human pubic area, or bare female breasts.

> [W]hen the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power. [Cits.] Such selective restrictions have been upheld only when the speaker intrudes on the privacy of the home, [cit.], or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure.

Id. at 209. Noting that the ordinance discriminated among movies on the basis of content and that the effect of the ordinance was to prevent the showing of movies containing any nudity from drive-in theaters, the Court concluded that "the limited privacy interest of persons on the public streets cannot justify this censorship of otherwise protected speech on the basis of its content." Id. at 212. Even assuming that the ordinance was aimed at the prevention of children seeing the nudity, the ordinance was impermissibly broad since even in regard to children all nudity is not obscene. Finally, if the purpose of the ordinance was to prevent traffic accidents as motorists caught glimpses of nude bodies on a giant screen, the ordinance was invalid since a fleeting glance of nudity from a moving car could not impose a greater traffic danger than many other types of scenes. Therefore, for purposes of traffic regulation the ordinance was underinclusive.

With this background, we turn to the statute in this case. We begin our analysis with the principle that

> . . . most situations where the State has a justifiable interest in regulating speech will fall within one or more of the various established exceptions . . . to the usual rule that governmental bodies may not prescribe the form or content of individual expression.

*Cohen v. California*, supra at 24. The exceptions, as discussed above, are obscene speech, fighting words, or objectionable speech in the presence of persons who should be protected, such as minors or a captive, unsuspecting audience. Of particular importance is the specific holding of *Cohen v. California*, supra, that in the absence of some

compelling reason, a statute criminalizing the public display of a four-letter expletive is unconstitutional. 403 U. S. at 26.

We examine the statute to see if it affects protected speech. If it does affect protected speech, we examine the statute to see if it is narrowly tailored to protect some vital government interest. Since the statute imposes criminal sanctions, a careful examination is critical. Before considering whether the statute is overbroad, we must determine if it "reaches a substantial amount of constitutionally protected conduct." *State v. Miller*, 260 Ga. 669 (398 SE2d 547) (1990). Finally, if we find the statute overbroad, we must determine whether it is subject to a narrowing construction by this court.

1. The state contends that the statute does not regulate constitutionally protected speech. The statute prohibits bumper stickers containing 1) profane words which describe sexual acts, excretory functions, or parts of the human body; or 2) lewd words which describe sexual acts, excretory functions, or parts of the human body. As discussed above, the regulation of profane words has been deemed constitutional only in the context of "fighting words" or where regulation is necessary to protect a captive audience or minors. The statute before us does not simply regulate fighting words or words directed to a captive audience or minors. The pedestrian, passenger, or driver who sees a bumper sticker bearing profane words is not a member of a captive audience under *Erznoznik*, supra. The audience of observers of bumper stickers is not made up primarily of minors or other persons of delicate sensibilities. Moreover, while language on a bumper sticker might provoke outrage, the face to face confrontation necessary to trigger the exception allowing regulation of "fighting words" would be unlikely. We therefore hold that the provision regulating profane words on bumper stickers reaches a substantial amount of constitutionally protected speech and unconstitutionally restricts freedom of expression as guaranteed by the First and Fourteenth Amendments of the United States Constitution and by the Georgia Constitution.

2. We consider whether the statute as written, which affects protected as well as unprotected speech, is overbroad.

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick v. Oklahoma*, 413 U. S. 601, 611-12 (93 SC 2908, 37 LE2d 830) (1973).

The governmental interest here, as offered by the state, is either the protection of the general public from possible offense or the regulation of traffic. If the government interest to be protected is the sensibilities of members of the public, the statute is overbroad. As written, the statute could have the absurd effect of criminalizing the display of a bumper sticker bearing any profanity in combination with words referring to any part of the human body. On the other hand, if the purpose of the statute is traffic regulation, the statute, like the ordinance in *Erznoznik*, is underinclusive. As pointed out by counsel for appellant, a bumper sticker bearing the legend "If you can read this you are driving too close" in tiny letters is at least as distracting as the bumper sticker at issue here. A statute which is underinclusive may present Equal Protection problems. As the Court said in *Erznoznik*,

> This Court frequently has upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it. [Cit.] This presumption of statutory validity, however, has less force when a classification turns on the subject matter of expression. . . . Thus, "under the Equal Protection Clause, not to mention the First Amendment itself," [quoting from *Police Dept. of Chicago v. Mosley*, 408 U. S. 92, 96 (1972)] even a traffic regulation cannot discriminate on the basis of content unless there are clear reasons for the distinctions.

422 U. S. at 215.

Not only is OCGA § 40-1-4 overbroad, its overbreadth results in a vagueness which prevents the citizen's conforming his conduct to the requirement of the law. Cf. *Gooding v. Wilson*, 405 U. S. 518 (92 SC 1103, 31 LE2d 408) (1972); *Smith v. City of Macon*, 244 Ga. 157 (259 SE2d 90) (1979).

3. Where two provisions of a statute are distinct, and where one provision is constitutional and the other unconstitutional, they may be severed and the statute saved. *Chaplinsky*, supra at 572. If this statute is to be found constitutional we must sever the two prohibitions of the statute, excise the prohibition of profane words on bumper stickers, equate lewd with obscene, and find the statute constitutional on the basis of the state's authority to regulate obscene speech. Although without question the legislature can ban obscene expression on a bumper sticker, what constitutes lewd or obscene communication is always a complicated question requiring a subjective evaluation. We do not find that lewd in the context of this statute means obscene. To do this we would have to construe lewd to equal obscene under the *Roth-Miller* test. As defined in Webster's Third

International Dictionary, the word lewd is much broader than obscene. Lewd means, among other things, vulgar, base, evil, wicked, poor, worthless, dissolute, lascivious, indecent, obscene, and salacious.

Another reason for our determination that this statute cannot be salvaged by a narrowing construction is the presence in the Georgia Code of OCGA § 16-12-80, which prohibits distribution and display of obscene materials. A bumper sticker exhibiting obscene material would be prohibited by this statute, and we will not strain to construe a second statute to prohibit the same conduct.[1]

Since we have found OCGA § 40-1-4 unconstitutional, we need not reach the appellant's enumeration of error concerning the sufficiency of the evidence in his conviction.

*Judgment reversed. All the Justices concur, except Smith, P. J., Weltner and Bell, JJ., who concur specially; Hunt, J., concurs in the judgment only.*

WELTNER, Justice, concurring specially.

I agree that the conviction and sentence must be set aside, but would invalidate these on statutory rather than constitutional grounds.

1. OCGA § 40-1-4 provides:

> No person owning, operating, or using a motor vehicle in this state shall knowingly affix or attach to any part of such motor vehicle any sticker, decal, emblem, or other device containing profane or lewd words describing sexual acts, excretory functions, or parts of the human body.

Prohibited by this statute are "profane or lewd" words that describe "sexual acts, excretory functions, or parts of the human body." The meanings of the words "profane" and "lewd" are:

(a) *Profane*:

> (i) 1. Manifesting irreverence or disrespect toward the Deity or sacred things. 2. Not religious or concerned with religious things; secular. 3. Vulgar; common; course.[2] [Funk &

---

[1] The writer of this opinion feels constrained to offer a personal note.

The holding of the court removes the state's ability to proscribe the bumper sticker involved under the statute in question. This brings to mind the statement of Benjamin Franklin:

"Everything one has a right to do is not best to be done."

Although the state may not impose criminal sanctions under OCGA § 40-1-4, this does not mean the exhibitor of such a bumper sticker stands blameless among his fellows. The exhibition of poor taste and demonstration of lack of concern for the sensibilities of others cast the offender in a position of societal disrespect. This position is well deserved.

[2] I doubt that the terms "vulgar," "common," and "course" have a sufficient particular-

Wagnalls Standard Dictionary.]

(ii) Common rather than sacred. Irreverent toward or contemptuous of sacred things. [Ballentine's Law Dictionary.] *Profanity*: Calling for or implying divine vengeance or divine condemnation, with or without directly employing the name of the Deity. [Id.]

(b) *Lewd*:

(i) 1. Characterized by or inciting to lust or debauchery. 2. Obscene; ribald; bawdy. [Funk & Wagnalls Standard Dictionary.]

(ii) *Lewdness*: The unlawful indulgence of lust; sexual impurity; gross indecency with respect to the sexual relation. [Ballentine's Law Dictionary.]

(iii) *Black's Law Dictionary*, p. 1052 (4th ed. 1968) defines [the word "lewd"] as including "obscene." [*Collins v. State*, 160 Ga. App. 680, 681 (288 SE2d 43) (1981).][3]

2. Because the words in question are neither "profane" (i.e., "sacrilegious") nor "lewd" (i.e., "obscene"), they do not come within the proscription of OCGA § 40-1-4. Accordingly, the conviction and sentence should be vacated.

I am authorized to state that Presiding Justice Smith and Justice Bell join in this special concurrence.

DECIDED FEBRUARY 22, 1991.

*Michael R. Hauptman, Bruce S. Harvey*, for appellant.
*Patrick H. Head, Solicitor, Victoria S. Aronow, Beverly M. Col-*

---

ity to define a crime. See *Hartrampf v. Ga. Real Estate Comm.*, 256 Ga. 45 (343 SE2d 485) (1986), holding the term "unworthiness" to be vague.

[3] To the extent that "lewd" is synonymous with "obscene," I agree that the display of a bumper sticker exhibiting obscene materials would be prohibited by OCGA § 16-12-80.

Compare *Holcombe v. State*, 5 Ga. App. 47, 49 (62 SE 647) (1908), where a statement ("You woman with the big fat rump pointed towards us, get out of the way.") was found to be "obscene and vulgar" under OCGA § 16-11-39; and *Sarnie v. State*, 247 Ga. 414 (276 SE2d 589) (1981), where words ("I hear that you sleep with the faculty. Whore.") were held *not* to violate the former Code section proscribing "obscene and vulgar or profane" language in the presence of a female, but violated another subsection proscribing "fighting words."

*lins, Assistant Solicitors*, for appellee.