S95A1976, S95X1977, S95A1978, S95X1979.
UNION CITY BOARD OF ZONING APPEALS et al.
v. JUSTICE OUTDOOR DISPLAYS, INC.; and vice versa.
(467 SE2d 875)

HINES, Justice.

Justice Outdoor Displays (Justice) leases real property in Union City for the purpose of erecting and maintaining outdoor advertising signs. In September 1994, Justice requested a variance from the Union City Sign Ordinance's 70-foot height limitation for signs along an interstate highway. Specifically, Justice sought the variance to preserve two signs already violating the height restriction by fourteen feet. The Union City Zoning Board of Appeals (Zoning Board) denied the application for a variance on October 17, 1994. Justice then appealed the denial of its variance request to the Superior Court of Fulton County, and moved for summary judgment, contending that the Union City Sign Ordinance violates both the United States Constitution and the Georgia Constitution.

On appeal, the trial court affirmed the Zoning Board's denial of Justice's application for a variance. However, the court also determined that certain provisions of the Union City Sign Ordinance are unconstitutional, granted Justice's motion for summary judgment as to the offending portions, and enjoined Union City from enforcing those sections of the ordinance. In particular, the trial court found that the ordinance's classification scheme favors some signs based on the content of their message in violation of the First Amendment to the United States Constitution and Art. I, Sec. I, Par. V of the Georgia Constitution. The court also determined that specific sections of the ordinance are unconstitutional for the following reasons: Section VI (B) (1) impermissibly restricts the content of messages on signs in residential zoning districts; Section VI (A) (1) (e) discriminates in favor of libraries, schools, and other quasi-public institutions; Section VI (D) (1) limits the placement of political signs to certain zoning districts for a limited period of time; and Section VI (A) (5) (e) is

overbroad and vague. Union City and the Zoning Board (collectively Union City) appeal the superior court's grant of summary judgment determining that these provisions of the ordinance are unconstitutional.

In upholding the Zoning Board's denial of Justice's application for a variance, the trial court severed the offending provisions and found that the ordinance's size, height, and distance requirements and limitations should remain intact. Accordingly, the court denied Justice's motion for summary judgment to strike the Union City Sign Ordinance in its entirety. Additionally, the court denied Justice's request for summary judgment based on its challenge to exceptions to permitting and fee requirements as set forth in the ordinance, and its request for attorney fees. Justice appeals the trial court's denial of summary judgment as to these issues, and its denial of the request for attorney fees.

### Case Nos. S95A1976, S95X1977

1. The Union City Sign Ordinance distinguishes between "off-premise signs" and "on-premise signs." The ordinance defines an "off-premise sign" as

> [a] sign, other than a special sign or a temporary sign, which identifies, advertises, or promotes a product, service, person, place, activity, event, idea, or any other thing located or obtainable elsewhere other than the lot where such sign is located and not principally sold on the lot on which it is located.

"On-premise sign" is defined as

> [a] sign, other than a special sign or temporary sign, which identifies, advertises, or promotes a product, service, person, place, activity, event, idea, or any other thing located or obtainable on or at the lot where such sign is located.

Each sign encompassed by the ordinance is classified as either an on-premise sign, an off-premise sign, or a temporary or special sign, and is restricted to designated zoning districts. The trial court determined that one effect of this scheme was to restrict on-premise signs and certain special signs to commercial messages concerning goods and services available on the property or which specifically pertain to the type of activity being advertised. Relying on *Metromedia v. City of San Diego*, 453 U. S. 490 (101 SC 2882, 69 LE2d 800) (1981), the court found that the ordinance's prohibition against the display of noncommercial messages in places where commercial signs are per-

mitted violates the First Amendment to the United States Constitution and the Free Speech Clause of the Georgia Constitution. Subsequently, the court enjoined Union City from limiting the content of messages on on-premise signs and seven specific categories of special signs enumerated in the ordinance.[1]

*Metromedia* concerned the validity of San Diego's sign ordinance which prohibited all "off-premise outdoor advertising display signs." *Metromedia*, 453 U. S. at 493, n. 1. Only "on-site" signs and signs falling within 12 specific categories were exempted from the general prohibition. *Metromedia*, 453 U. S. at 495, n. 3.[2] The Supreme Court explained that such a scheme permitted all on-site commercial advertising, but forbade all other commercial and noncommercial communications using fixed-structure signs unless otherwise permitted by a specific exception. Id. at 495-496. Essentially, the ordinance would permit a property owner to advertise his or her own goods or services, but would prohibit him or her from advertising the goods or services of others or displaying most noncommercial messages. Id. at 503.

In determining San Diego's ordinance to be unconstitutional on its face, the Supreme Court recognized that the ordinance favored on-site commercial advertising over aesthetics and traffic safety interests, while banning noncommercial billboards in the same locations. Id. at 513. The court noted that noncommercial speech has historically been accorded greater protection than commercial speech. Id. See also *Central Hudson Gas &c. Corp. v. Public Svc. Comm.*, 447 U. S. 557 (100 SC 2343, 65 LE2d 341) (1980). Accordingly, the plurality in *Metromedia* held:

> Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

*Metromedia*, 453 U. S. at 513. The First Circuit Court of Appeals understood this conclusion to follow "logically from the First Amend-

---

[1] The trial court enjoined limiting the content of principal identification signs, marketing signs, construction signs, instructional signs, real estate directional signs, real estate signs, and special event signs.

[2] The city of San Diego exempted the following signs from the general prohibition: government signs; signs located at public bus stops; signs manufactured, transported, or stored within the city, if not used for advertising services; commemorative historical plaques; religious symbols; signs within shopping malls; for sale and for lease signs; signs on public vehicles; signs on commercial vehicles; signs depicting time, temperature, and news; approved temporary, off-premises, subdivision directional signs; and temporary political signs. *Metromedia*, 453 U. S. at 495-496.

ment's value structure," and interpreted the rationale employed in *Metromedia* as follows:

> if a commercial message overrides the city's aesthetics and safety interests, any message that is at least as important in the First Amendment hierarchy also must override those interests. Because noncommercial speech is entitled to a higher degree of protection than commercial speech, San Diego could not decide that its aesthetic and safety interests were outweighed by the need to express commercial messages but not by the need to express noncommercial messages.

*Ackerley Communications of Massachusetts v. City of Somerville*, 878 F2d 513, 517 (1st Cir. 1989). Simply put, San Diego could not prohibit the display of noncommercial speech in locations where commercial billboards were permitted. See *Nat. Advertising Co. v. Town of Babylon*, 900 F2d 551 (2nd Cir. 1990), cert. denied, 498 U. S. 852 (111 SC 146, 112 LE2d 112) (1990) (city ordinance permitting only signs identifying the person, establishment, product or service available on the premises was found to impermissibly discriminate against noncommercial speech in favor of commercial speech).

Likewise, the municipality of Union City made a value judgment, determining that its interest in permitting on-premise signs outweighed its stated purpose of, among other things, protecting public safety and maintaining the tranquil environment of residential areas. Subsequently, Union City cannot now restrict the content of on-premise signs to commercial messages. *Metromedia*, 453 U. S. at 513. Since the ordinance limits on-premise signs to messages advertising a product, person, service, place, activity, event, or idea directly connected with the property, it effectively bans signs bearing noncommercial messages in zoning districts where a sign of the same size and structure may display commercial advertisements. For instance, under the Union City ordinance the proprietor of a dining establishment could erect a sign identifying "Joe's Famous Pizza," but could not post a sign, identical in size, color, lettering, structure, and placement, proclaiming his view that "abortion is murder." *Nat. Advertising Co. v. Town of Babylon*, 703 FSupp. 228, 240 (E.D.N.Y. 1989).

Accordingly, because the Union City Sign Ordinance prohibits the display of noncommercial messages at locations where commercial messages are permitted, we find that the trial court did not err in finding that such a restriction violates the First Amendment to the United States Constitution and Art. I, Sec. I, Par. V of the Georgia Constitution. Likewise, the court did not err in determining that other provisions of the ordinance which limit the message of certain special signs to commercial communication directly connected to the

location of the sign also violate the United States Constitution and the Georgia Constitution.[3]

However, we recognize that the Eleventh Circuit Court of Appeals has addressed the validity of a similar ordinance, and determined that the "on-premise" designation does not equate to commercial speech. *Messer v. City of Douglasville*, 975 F2d 1505 (11th Cir. 1992). Rather, that court determined that an on-premise/off-premise distinction is viewpoint neutral and, "regulates signs not based on the viewpoint of the speaker, but based on the location of the signs." Id. at 1509. That court reasoned that restricting a location to on-premise signs does not favor commercial speech because any enterprise could erect a sign bearing either a commercial or noncommercial message so long as it related to any activity on the premises. Id. The *Messer* court illustrated this rationale as follows: "an auto mechanic's garage would be able to put up a noncommercial message relating to the recycling of used motor oil." Id. See also *Wheeler v. Commr. of Highways*, 822 F2d 586, 591 (6th Cir. 1987), cert. denied, 484 U. S. 1007 (108 SC 702, 98 LE2d 653) (1988) (a distinction between onsite and offsite noncommercial signs is constitutionally permissible).

We believe this rationale does not address the concerns expressed in *Metromedia*. The Supreme Court in *Metromedia* stated:

> Although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests.

*Metromedia*, supra at 514. The Supreme Court further explained that, "[w]ith respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse." Id. at 515. However, the rationale employed in *Messer* would permit this very result; a municipality could place a higher value on a particular category of noncommercial speech, such as speech directly connected to the location of the sign displaying the message, to the exclusion of all other noncommercial speech. We find that "with respect to noncommercial speech," such authority would permit a municipality to "choose the appropriate subjects for public discourse." Id. Consequently, even assuming that a sign defined as an "on-premise" sign by the Union City Sign Ordinance can be classified as "noncommercial," the city may not restrict the message on any such sign to those subjects the city deems appropriate, including information concerning

---

[3] These include principal identification signs, marketing signs, construction signs, instructional signs, real estate directional signs, real estate signs, and special event signs.

goods and services connected with a particular site. " 'To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth.' " Id. (quoting *Consolidated Edison Co. of New York v. Public Svc. Comm. of New York*, 447 U. S. 530, 538 (100 SC 2326, 2333, 65 LE2d 319) (1980)).

2. Union City contends that the trial court erred in finding that the Union City Sign Ordinance unconstitutionally restricts the content of messages on signs in residential zoning districts.

The ordinance restricts signs in residential zoning districts to on-premise signs and certain temporary or special signs. Although the ordinance allows temporary "political signs," identifying or urging support for a particular election issue or candidate, it does not provide for permanent signs expressing the political, religious, or other noncommercial personal views of residents. Signs not in compliance with the ordinance are specifically prohibited.

The United States Supreme Court recently struck down as unconstitutional an ordinance which prohibited the display of all residential signs not within a narrow list of exceptions. *City of Ladue v. Gilleo*, 512 U. S. _____ (114 SC 2038, 129 LE2d 36) (1994). The court in *City of Ladue* recognized the unique and significant means of expression which residential signs provide.

> Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the "speaker."
>
> . . .
>
> Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute.
>
> . . .
>
> Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating and not participating in some public debate.

*City of Ladue*, 114 SC at 2046. Ultimately, the Supreme Court determined that the city of Ladue had not established the existence of an

adequate substitute for communication through residential signs that the city had prohibited. Id.

Likewise, the record does not demonstrate that Union City has provided any alternate medium of expression sufficiently equivalent to residential signs. Although the Union City ordinance does not exact a virtually complete ban on residential signs, as did the ordinance in *City of Ladue*, the character of some of the speech precluded in both ordinances is the same, namely the expression of the personal views of a resident on subjects unrelated to the residential lot on which the sign is located. Accordingly, because the Union City ordinance prohibits such vital expression through the unique and convenient medium of residential signs, without providing for a viable alternative, and for the reasons discussed in Division 1, we find that the trial court did not err in declaring the content restrictions on on-premise signs in residential zoning districts unconstitutional.

3. Union City argues that the trial court erred in finding that the Union City Sign Ordinance contains content-based discrimination in favor of certain signs posted by libraries, schools and other quasi-public institutions in violation of the First Amendment.

Section VI (C) (2) (b) of the Union City Sign Ordinance prohibits all off-premise signs from distances closer than 500 feet from the intersection of any public streets. However, Section VI (A) (1) (e) provides:

> Provisions be made for churches, libraries, schools and other quasi-public institutions located off of major thoroughfares where such facilities cannot be seen by the motoring public from the major thoroughfares to have the right to place one (1) off-premise directional sign in the City of Union City. Such signs shall be placed off the right-of-way and shall be at lease [sic] *50 feet* from any intersection so as not to obstruct the view of the motoring public.

(Emphasis supplied.) Union City argues that the two provisions may be construed consistently and narrowly to uphold both provisions as constitutional.

The 500-foot prohibition articulated in Section VI (C) (2) (B) is specifically applicable to all off-premise signs; thus, the 50-foot limitation for quasi-public institutions would be superfluous and unnecessary unless intended as an exception to the general rule. It has long been a rule of statutory construction to "give a sensible and intelligent effect to each [part of a statute], for it is not to be presumed that the legislature intended any part of the statute to be without meaning." *Twentieth Century-Fox Film Corp. v. Phillips*, 76 Ga. App. 825, 831 (47 SE2d 183) (1948). Accordingly, we interpret the 50-foot limi-

tation for quasi-public institutions to be inconsistent with the 500-foot general rule, and find that, as to those particular institutions, the more specific 50-foot limitation provision governs. Id.

First, we disagree with the trial court's determination that the 50-foot exception for quasi-public institutions is a First Amendment issue. The 50-foot exception is not predicated on the content of the speech. To the contrary, the ordinance permits directional messages on off-premise signs both within and outside the 50-foot exception. Thus, because the ordinance favors quasi-public institutions based on the *classification of the speaker* rather than on the content of the message, we find that an equal protection analysis is appropriate. Whereas the protection provided in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. I, Par. II, of the Georgia Constitution of 1983 are coextensive, we apply them as one. *Grissom v. Gleason,* 262 Ga. 374 (418 SE2d 27) (1992).[4]

Since Justice is not a member of a suspect class and erecting a directional sign within 50 feet of an intersection is not a fundamental right, we apply the "rational basis test" to determine if the favored classification created by the 50-foot exception violates the Equal Protection Clause. *Love v. Whirlpool Corp.,* 264 Ga. 701 (449 SE2d 602) (1994). "Under this test, the court will uphold the statute if, under any conceivable set of facts, the classification bears a rational relationship to a legitimate end of government not prohibited by the [C]onstitution." *Craven v. Lowndes County Hosp. Auth.,* 263 Ga. 657, 659 (437 SE2d 308) (1993). Clearly, the city's stated interest in public safety and welfare constitutes a "legitimate end of government." Furthermore, by limiting signs within 50 feet of an intersection to those which direct drivers to institutions of general public concern, the ordinance reduces the total number of signs in close proximity to the intersection, thereby reducing potentially dangerous visual clutter for the motoring public. Accordingly, we find that the Union City Sign Ordinance 50-foot exception for quasi-public institutions bears a rational relationship to a legitimate government concern and therefore violates neither the state nor federal constitution. The trial court's determination to the contrary was in error.

4. Union City also maintains that the trial court erred in finding unconstitutional a provision of the sign ordinance which restricts the placement of political signs to certain zoning districts for a limited period of time prior to an election. We disagree.

Section VI (D) (1) of the Union City Sign Ordinance restricts

---

[4] "We do not foreclose the possibility that this court may interpret the equal protection clause in the Georgia Constitution to offer greater rights than the federal equal protection clause as interpreted by the United States Supreme Court." 262 Ga. at 376, n. 1.

signs which identify and urge voter support for a particular election issue, political party or candidate for public office to certain zoning districts for a period of six weeks prior to and one week after a duly authorized election. Because the seven-week durational limitation, applicable only to political signs, is determined by the message displayed, the restriction is "content based." *City of Cincinnati v. Discovery Network*, 507 U. S. 410 [5] (113 SC 1505, 123 LE2d 99) (1993). Moreover, the durational limitation on political signs impermissibly favors some forms of commercial speech over noncommercial political speech. *Whitton v. City of Gladstone*, 54 F3d 1400, 1404 (8th Cir. 1995). For instance, the ordinance does not place time limits on the period a resident may post a sign advertising the sale of his or her house, but restricts to seven weeks the period in which a sign bearing a political election message may be displayed. Such a scheme constitutes a content-based restriction. *Metromedia*, supra.

As a content-based restriction, the durational limitation on political signs must be subjected to strict scrutiny; namely, the city must establish that "its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Whitton*, supra at 1408 (quoting *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 45 (103 SC 948, 74 LE2d 794) (1983)). Pretermitting whether the city's stated goal of promoting aesthetics and traffic safety by reducing the volume of political signs constitutes a compelling state interest, the durational restrictions are not "narrowly drawn" to effectuate that purpose. Similar to the ordinance in *Whitton*, the Union City ordinance already restricts the total number of political signs per lot and the total amount of square footage per sign. Furthermore, Union City has not demonstrated that political signs pose a greater danger to the motoring public or detract from the aesthetics of the city any more than other signs, with greater or unlimited durational limitations, permitted in the same zoning districts. Accordingly, we find that Union City's durational limitation placed on political signs does not withstand strict scrutiny, and therefore constitutes an unconstitutional restraint on free speech. Compare *Whitton*, supra. The trial court did not err.

5. Union City's final enumeration of error is that the trial court erred in holding as unconstitutionally overbroad and vague a provision in the sign ordinance which provides that, "[n]o sign shall contain statements, words or pictures of an obscene, indecent or immoral character such as will offend public morals." Because the ordinance provides for criminal sanctions for violations thereof, the city's argument that, in a civil setting, language need not be obscene to be regulated is without merit.

The Eleventh Circuit considered a challenge to an almost identically worded statute and determined that it was unconstitutional be-

cause of overbreadth and vagueness. *Solomon v. City of Gainesville*, 763 F2d 1212 (11th Cir. 1985). The statute in *Solomon* prohibited signs "displaying any statement, word, character or illustration of an obscene, indecent or immoral nature." Id. at 1213. The court concluded that the statute was vague because the prohibitions were in no way defined. Id. at 1215. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972). The law must set "explicit standards" to provide "fair warning" for determining what behavior is prohibited. *Grayned*, 408 U. S. at 108.

Union City contends that, unlike the statute in *Solomon*, its regulation clearly defines the prohibited speech by limiting illegal signs to those "such as will offend public morals." We disagree. The additional language in no way clarifies what speech is forbidden; rather, it requires the speaker to step outside of his or her own moral consciousness and independently determine the moral sensibilities of the general public. Such a scheme does not provide "explicit standards," and is therefore void for vagueness.

Moreover, the Union City restriction is overbroad because "its broad, undefined terms necessarily sweeps within its ambit both protected and unprotected speech." *Solomon*, supra at 1215. In *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991), this Court determined that a statute prohibiting profane or lewd bumper stickers unconstitutionally restrained freedom of expression by restricting constitutionally protected speech. We noted that the regulation of profane words was constitutional only in the context of "fighting words" or where a captive audience of minors was concerned. *Cunningham*, 260 Ga. at 831. Like the statute in *Cunningham*, the Union City regulation extends beyond this limitation without establishing that the restriction is "narrowly tailored to protect some vital government interest." Id. at 831-832. Accordingly, the trial court did not err in finding that the provision of the Union City Sign Ordinance that prohibits obscene, indecent or immoral speech is unconstitutionally overbroad and vague. But cf. *Breaux v. State*, 230 Ga. 506 (197 SE2d 695) (1973) (statute prohibiting "obscene and vulgar or profane language in the presence of a female or of a male under the age of 14 years," not too vague, indefinite and overbroad).

*Case Nos. S95A1978, S95X1979*

6. Justice first enumerates as error the trial court's determination that exemptions to permitting and fee requirements contained in the Union City Sign Ordinance do not violate the federal or state constitution.

The Union City Sign Ordinance exempts four types of signs from permitting requirements: public service signs, political signs, on-premise identification signs in certain zoning districts which are less than two square feet in area, and real estate signs of less than sixteen square feet. Likewise, the ordinance also exempts a number of signs from permit-fee requirements: public service signs, political signs, temporary real estate directional signs, window marketing signs, identification signs in certain zoning districts not exceeding two square feet, temporary real estate signs of less than sixteen square feet, instructional signs, construction signs, bulletin boards, special event signs in certain zoning districts, and signs erected by nonprofit groups. Justice contends that the Supreme Court in *Metromedia*, "concluded that a city may not exempt the types of signs from its permitting and fee requirements which are exempted by the Union City ordinance." We find Justice's assertion to be inaccurate.

The Union City exemptions of which Justice complains are clearly distinguishable from the exemptions addressed in *Metromedia*; while the San Diego ordinance provided exemptions from a general ban on all off-premise outdoor advertising, the Union City ordinance exempts certain signs from permitting and fee requirements. *Metromedia*, supra. Furthermore, Justice does not contend that the *permit process* is an unconstitutional restriction on speech; rather, it challenges an exception to the process which concerns a regulation of the time, manner or place of speech. *Messer*, supra at 1513. Such regulation has been held to " 'stand on a different footing from laws prohibiting speech altogether.' " Id. (Citing *Linmark Assoc. v. Willingboro*, 431 U. S. 85, 93 (97 SC 1614, 52 LE2d 155) (1977).)

The signs exempted from permitting and fee requirements are predominately signs of a temporary nature, relatively small signs, and signs posted in residential zoning districts. We find that Union City's decision to exempt these signs from permitting and fee requirements does not constitute a restraint on any expression or permit the city to "choose the appropriate means for public discourse." *Metromedia*, 453 U. S. at 515. Rather, it *promotes* public discourse by eliminating administrative restrictions for relatively simple signs, while fostering public safety and welfare by allowing the city to concentrate its resources on ensuring that larger, permanent, and more complicated signs are in conformity with all aspects of the ordinance. Accordingly, we find Justice's challenge to Union City's permitting and fee exemptions to be without merit.

7. Justice argues that the trial court erred in severing the provisions determined to be unconstitutional rather than striking down the sign ordinance in its entirety. We disagree.

This Court has long favored upholding legislative enactments where invalid provisions therein are stricken:

> When a statute cannot be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose.

*Elliott v. State*, 91 Ga. 694, 696 (17 SE 1004) (1893). See also *City of Newnan v. Atlanta Laundries*, 174 Ga. 99 (162 SE 497) (1932). Furthermore, "for one part of a statute to be upheld as severable when another is stricken as unconstitutional, they must not be mutually dependant on one another." *City Council of Augusta v. Mangelly*, 243 Ga. 358, 363-364 (254 SE2d 315) (1979), citing *Carter v. Carter Coal Co.*, 298 U. S. 238 (56 SC 855, 80 LE 1160) (1936).

The purpose which Union City sought to accomplish by enacting the sign ordinance is specifically stated in Article III to be the reasonable regulation of signs "in the interest of the public safety and welfare by the establishment of standards for the location, size, illumination, number, construction and maintenance of all signs and advertising structures. . . ." Once the unconstitutional provisions are removed, the remaining time, place, and manner provisions work to accomplish this very purpose. In particular, surviving provisions of the ordinance address the following concerns: height and square footage requirements, lighting, construction and maintenance, obstruction of fire escapes, traffic visibility, structural safety, emission of sound, limitation of quantity, location, spacing, inspection and enforcement. Regardless of the invalidity of the classification scheme as set forth in the ordinance, these time, place, and manner regulations work independently thereof to further the city's interests in public safety and welfare. A prohibition against obstructing a fire escape or impairing the vision of motorists in no way depends on whether a sign is given an on-premise or off-premise designation or whether political signs are restricted to any particular duration of time. Moreover, the ordinance also includes a "severability clause," thereby creating the presumption that Union City intended for invalid provisions to be separated therefrom rather than be considered as an inextricable part of the whole. *Mangelly*, supra at 363. Consequently, we find the offending provisions may be severed to permit the balance of the ordinance to remain intact.

8. Because Justice has succeeded on a " 'significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing the suit,' " it is considered a "prevailing party" pursuant to 42 USC § 1988. *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U. S. 782, 791-792 (109 SC 1486, 103 LE2d 866) (1989), citing *Nadeau v. Helgemoe*, 581 F2d 275, 278-279 (1st Cir. 1978). The

Court has consistently expressed an expansive view in defining a "prevailing party" for purposes of attorney fees under § 1988, referring to the above test as a "generous formulation." *Farrar v. Hobby*, 506 U. S. ___ (113 SC 566, 572, 121 LE2d 494) (1992). Although Justice did not succeed in obtaining a variance for its signs, the substantial changes to the Union City Sign Ordinance brought about by this litigation have "materially alter[ed] the legal relationship between the parties by modifying [Union City's] behavior in a way that directly benefits [Justice]." Id. at 573. Therefore, we reverse the judgment of the trial court respecting its denial of Justice's request for attorney fees and remand this case for determination of a reasonable attorney fee as outlined in *Hensley v. Eckerhart*, 461 U. S. 424 (103 SC 1933, 76 LE2d 40) (1983).

*Judgment affirmed in part and reversed in part and case remanded. All the Justices concur.*

DECIDED MARCH 11, 1996.

*McNally, Fox & Cameron, Philip P. Grant,* for appellants.
*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling,* for appellee.