## S99A1766. HOWARD v. THE STATE.
(527 SE2d 194)

THOMPSON, Justice.

The question for decision in this appeal is whether *Powell v. State*,[1] which struck down the sodomy statute insofar as it applies to private, non-commercial acts between consenting adults,[2] impliedly struck down the *solicitation* of sodomy statute.[3] We hold that it did not.

The victim, a waitress, was cleaning the men's room of a restaurant when defendant Howard entered. The waitress told Howard that she was cleaning the restroom but would be finished in a few minutes. Howard turned, locked the door, "and would not let [the waitress] out." Howard told the waitress that "he knew that [she] wanted it" and he offered her $20 for a "blow job." The victim said "no" and shoved the money back at Howard. Then Howard pulled down his pants, exposed his genitals, grabbed the waitress, and tried to force her to perform oral sex. The waitress resisted; Howard took her head and banged it against the wall. When another person knocked on the restroom door, the waitress was able to open the door and escape.

Howard was arrested and charged with attempt to commit aggravated sodomy, solicitation of sodomy, and false imprisonment. He was convicted on all three charges, and this appeal followed.[4]

1. In *Powell*, supra, this Court ruled that non-commercial sodomy, conducted in private between consenting adults, is protected by the Georgia Constitution's right to privacy. In so doing, we made it clear, however, that the right to privacy does not protect all sexual conduct:

---

[1] 270 Ga. 327 (510 SE2d 18) (1998).

[2] OCGA § 16-6-2.

[3] OCGA § 16-6-15.

[4] The crimes occurred on June 8, 1996. Howard was indicted on July 9, 1996, and charged with attempt to commit aggravated sodomy, solicitation of sodomy, and false imprisonment. Trial commenced on September 10, 1996, and the jury returned its verdict the same day. The trial court sentenced Howard to serve six years for the attempt to commit aggravated sodomy; six years (concurrent) for the false imprisonment; twelve months (consecutive) for solicitation of sodomy. On March 9, 1999, Howard filed a motion for an out-of-time appeal which was granted the same day. Thereafter, on March 19, 1999, the trial court denied Howard's motion for a new trial. Howard filed a notice of appeal on April 14, 1999. The case was docketed in this Court on August 26, 1999, and submitted for a decision on the briefs on October 18, 1999.

Implicit in our decisions curtailing the assertion of a right to privacy in sexual assault cases involving sexual activity taking place in public, performed with those legally incapable of giving consent, performed in exchange for money, or performed with force and against the will of a participant, is the determination that the State has a role in shielding the public from inadvertent exposure to the intimacies of others, in protecting minors and others legally incapable of consent from sexual abuse, and in preventing people from being forced to submit to sex acts against their will.

Id. at 333.

We observed that, to fulfill its role, the State *can* protect the public by enacting legislation which criminalizes various forms of sexual conduct, including sexual conduct which can be said to take place in private, between consenting adults: e.g., sexual contact with prisoners, the institutionalized, and the patients of psychotherapists (OCGA § 16-6-5.1); incest (OCGA § 16-6-22); and solicitation of sodomy (OCGA § 16-6-15). Id. Thus, while we struck down the sodomy statute because it unconstitutionally violated the right to privacy when that right was exercised in private between consenting adults, *Powell*, supra at 332, we did not hold that the right to privacy protected sodomy generally; nor did we hold that it protected the solicitation of sodomy in particular.

There is no need to strike down the solicitation of sodomy statute in its entirety simply because, *as written*, it can be said to apply to constitutionally protected conduct. As this Court pointed out in *City of Macon v. Smith*, 244 Ga. 157, 158 (259 SE2d 90) (1979):

To withstand constitutional attack, a statute or ordinance which prohibits speech "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." Gooding v. Wilson, 405 U. S. 518, 522 (92 SC 1103, 31 LE2d 408) (1972). In Gooding v. Wilson, supra, the United States Supreme Court held unconstitutional Code Ann. § 26-6303 which prohibited "opprobrious words or abusive language tending to cause a breach of the peace . . ." In that case, the Supreme Court held the statute unconstitutionally overbroad after finding that the Georgia appellate courts had not narrowed and limited the application of the statute to fighting words. The implication is clear that had there been such a narrowing construction, the language of the statute itself would be constitutionally permissible. Gooding, supra at 524.

See also *Cunningham v. State*, 260 Ga. 827, 831 (400 SE2d 916) (1991) (before considering whether statute that affects protected speech is overbroad, it must be determined if it can be narrowly construed by this Court). Thus, this Court can narrowly construe the solicitation of sodomy statute to only punish speech soliciting sodomy that is not protected by the Georgia Constitution's right to privacy. See *State of Ga. v. Davis*, 246 Ga. 761, 762 (2) (272 SE2d 721) (1980) (narrowly construing criminal solicitation statute (OCGA § 16-4-7) to only embrace language which creates a clear and present danger that a felony will be committed).

It follows that *Powell* did not impliedly strike down the solicitation of sodomy statute. It also follows that, under the facts of this case, Howard's conviction of solicitation of sodomy did not violate his right to privacy and free speech.

2. The evidence was sufficient to enable any rational trier of fact to find Howard guilty beyond a reasonable doubt of attempt to commit aggravated sodomy, solicitation of sodomy, and false imprisonment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Anderson v. State*, 142 Ga. App. 282 (235 SE2d 675) (1977) (defendant convicted of solicitation of sodomy when she offered to give an undercover officer a "blow job" for $25).

3. Howard asserts the trial court erred in failing to merge the false imprisonment offense with the attempt to commit aggravated sodomy. We disagree. False imprisonment (OCGA § 16-5-41) and aggravated sodomy (OCGA § 16-6-2 (a)) are not included offenses as a matter of law. See *Hardy v. State*, 210 Ga. App. 811, 813 (3) (437 SE2d 790) (1993) (kidnapping and aggravated sodomy are not included offenses as a matter of law). Although these crimes may be included as a matter of fact when the same, or less than all the facts are used to prove both crimes, *Hambrick v. State*, 256 Ga. 148 (344 SE2d 639) (1986), the facts used to prove the false imprisonment were different from those used to show the essential elements of the attempt to commit aggravated sodomy. *Peterson v. State*, 212 Ga. App. 31 (441 SE2d 267) (1994); *Dawson v. State*, 203 Ga. App. 146 (416 SE2d 125) (1992).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs in judgment only, and Sears, J., who dissents.*

SEARS, Justice, dissenting.

By overlooking the pivotal constitutional analyses in this matter, the majority upholds an unconstitutionally overbroad statute, one that makes it illegal to solicit another to engage in constitutionally protected, legal conduct. The majority accomplishes this by construing the statute in an impermissibly vague manner. Because the majority's ruling defies the dictates of our Federal and Georgia Con-

stitutions, I respectfully dissent.

1. In *Powell v. State*,[5] this Court ruled that non-commercial, consensual and private acts of sodomy between competent persons were protected by the constitutional right of privacy, and that the state statute criminalizing sodomy (OCGA § 16-6-2 (a)) manifestly infringed upon the privacy rights of Georgia's citizens.[6] Accordingly, Georgia's sodomy statute was struck down in that case. However, *Powell* did not have cause to address the separate statute criminalizing the solicitation of sodomy, OCGA § 16-6-15 (a). As a matter of common sense though, it would seem that after the Court held that acts of sodomy were no longer illegal, it would no longer be illegal to discuss or solicit for those same acts.

Today, however, the majority upholds the constitutionality of the solicitation of sodomy statute by reasoning that, because the facts of this particular case do not involve the solicitation of consensual, private sodomy, the privacy rights that were so eloquently discussed by Chief Justice Benham in the *Powell* opinion are not implicated by this appeal. In other words, the majority holds that because the solicitation of sodomy statute is applied in this case to acts that are not constitutionally protected, the statute must be sound. This analysis is simply the wrong constitutional inquiry. The question is not whether the statute can be applied to acts that are not constitutionally protected, but whether the statute can be applied in a way that impinges upon constitutionally protected conduct, in which case the statute is overbroad and must be struck down.

A statute regulating speech, such as the solicitation of sodomy statute, is generally deemed overbroad when it proscribes, *or can proscribe*, constitutionally protected conduct.[7] Thus, on its face, the solicitation of sodomy statute is overbroad as it infringes upon the rights of citizens to discuss engaging in private, consensual, noncommercial sodomy, an act that is protected under Georgia's right to privacy. Under the majority opinion, *all* conversations regarding sodomy are subject to state intrusion and punishable as misdemeanors, from the very private to the public. If the right of free speech means anything at all, it must mean that the State has no business intruding into the sexually explicit, intimate conversations of consenting adults, regardless of whether they are polite or boorish.

The solicitation of sodomy statute is content-based, as it criminalizes speech in which one suggests sodomy. Where, as here, a con-

---

[5] 270 Ga. 327 (510 SE2d 18) (1998).

[6] 270 Ga. at 332, 336.

[7] See *Sable v. State*, 248 Ga. 10, 13 (282 SE2d 61), cert denied, 454 U. S. 973 (102 SC 524, 70 LE2d 393) (1981), overruled on other grounds, 264 Ga. 323 (443 SE2d 839) (1994); *State v. Davis*, 246 Ga. 761, 762 (272 SE2d 721) (1980).

tent-based statute affects constitutionally protected conduct, it must be examined to determine whether it is narrowly tailored to serve a vital government interest.[8] Criminal statutes must be especially carefully examined in this regard.[9] If a criminal statute can be applied to reach a substantial amount of constitutionally protected conduct without serving a vital government interest, it is unconstitutionally overbroad.[10]

As noted, the solicitation of sodomy statute prohibits all discussions between consenting adults about engaging in private, noncommercial acts of sodomy.[11] However, this Court has held that the actual doing of those very same acts "rank[s] as more private and more deserving of protection from governmental interference" than any other, and thus are "at the heart of the Georgia Constitution's protection of the right of privacy."[12] Thus, the solicitation of sodomy statute cannot serve a vital government interest, as its primary effect is to criminalize private discussions between adults concerning acts that this Court has deemed worthy of intense protection under our State Constitution. It follows that the statute obviously reaches "a substantial amount of constitutionally protected conduct." Because the solicitation of sodomy statute is not narrowly tailored to serve a vital government interest and impacts upon a substantial amount of constitutionally protected conduct, it is overbroad, and should be struck down as unconstitutional.[13]

2. As noted in *Powell*, this Court struck down Georgia's sodomy statute. The majority, however, attempts to "back-pedal" from that ruling by stating that *Powell* did not hold that the right to privacy "protected sodomy generally,"[14] and then reasons that the solicitation of sodomy statute can be narrowly construed to support legitimate governmental interests. However, the majority opinion provides no guidance as to *when* the solicitation statute is enforceable and when it is not (other than to rule it is enforceable in this particular case). There are two problems with this analysis: First, as explained in Division 3, infra, the legitimate government interests referred to by the majority are already protected satisfactorily by other criminal statutes. Second, under the majority's construction of the solicitation of sodomy statute, citizens cannot know in advance whether their conduct is prohibited, and the statute will be enforced by prosecutors and judges on an ad-hoc basis based upon their subjective predilec-

---

[8] *Cunningham v. State*, 260 Ga. 827, 831 (400 SE2d 916) (1991).
[9] Id.
[10] (Citation omitted.) Id.
[11] OCGA §§ 16-6-2; 16-6-15 (a).
[12] *Powell*, 270 Ga. at 332.
[13] *Cunningham*, supra.
[14] Op. at 243.

tions and standards. Hence, the majority's construction of the statute is unconstitutionally vague.

"[T]he principle that . . . criminal statutes [must] give sufficient warning to enable [individuals] to conform their conduct to avoid that which is forbidden is one of the great bulwarks of our scheme of constitutional liberty."[15] This Court and the United States Supreme Court have consistently held that to provide "sufficient warning" of prohibited conduct, a criminal statute must give "fair notice" that by engaging in such conduct, one will be held criminally responsible.[16] Of course, every mere uncertainty as to a statute's applicability will not render it void for vagueness.[17] However, it is beyond question that the Due Process Clause requires that the law give a person of ordinary intelligence fair warning that her specific conduct is forbidden, so that she may conduct herself accordingly.[18] " 'All persons are entitled to be informed as to what the State commands or forbids.' "[19]

Bearing these principles in mind, I believe it is fairly obvious that the majority's construction of the solicitation of sodomy statute fails to provide Georgia's citizens with fair notice that they can be held criminally responsible for their actions. Division 1 of the majority opinion, while intimating that there might be situations where the solicitation of sodomy statute does not apply in accordance with *Powell*, leaves open the question of when the statute may be enforced (other than to permit the statute's enforcement in this case). In fact, the majority opinion appears to revive the State's power to regulate sexual conduct which takes place in private[20] — even though that power was recently disavowed in *Powell*.[21] Certainly, the majority opinion's construction of the solicitation statute fails to "fix . . . an ascertainable standard of guilt,"[22] thereby rendering the construction impermissibly vague.[23]

The majority's construction of the solicitation of sodomy statute is also unconstitutionally vague for a second compelling reason. The

---

[15] *Rose v. Locke*, 423 U. S. 48, 59 (96 SC 243, 46 LE2d 185) (1975).

[16] *Hall v. State*, 268 Ga. 89 (485 SE2d 755) (1997); *Roemhild v. State*, 251 Ga. 569, 572 (308 SE2d 154) (1983). See *Rose*, 423 U. S. at 49-50; *Papachristou v. City of Jacksonville*, 405 U. S. 156, 162 (92 SC 839, 31 LE2d 110) (1972); *Grayned v. City of Rockford*, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972); *Sabel v. State*, 250 Ga. 640 (300 SE2d 663) (1983).

[17] See *Rose*, 423 U. S. at 50.

[18] Id.; *Hubbard v. State*, 256 Ga. 637, 639 (352 SE2d 383) (1987); *United States v. Harriss*, 347 U. S. 612, 617 (74 SC 808, 98 LE 989) (1954).

[19] *Hall*, 268 Ga. at 92, quoting *Lanzetta v. New Jersey*, 306 U. S. 451, 453 (59 SC 618, 83 LE 888) (1939).

[20] See op. at 243.

[21] See note 8, supra, and accompanying text.

[22] *United States v. L. Cohen Grocery Store Co.*, 255 U. S. 81, 89 (41 SC 298, 65 LE 516) (1921).

[23] See id.

majority's .construction of the statute fails to provide explicit standards for those who would apply it, leaving the statute susceptible to arbitrary and selective enforcement.[24] Criminal statutes must set forth sufficiently definite standards for those responsible for their enforcement "so that basic policy matters are not impermissibly delegated 'to policemen, judges, and juries for resolution on an ad hoc and subjective basis [ ].' "[25] The Due Process Clause prohibits statutes that, by avoiding the requisite definite standards, " 'allow the net to be cast at large, to enable [persons] to be caught who are vaguely undesirable in the eyes of police and prosecution.' "[26]

The majority's construction of the solicitation of sodomy statute suffers from these very infirmities. The majority holds that the statute is enforceable in some situations, and not enforceable in others. Stated differently, whether the statute applies depends upon the situation. But the majority does not explain what those different situations might be. Under this construction, there are no definite and explicit standards to guide the statute's enforcement, and thus future decisions whether to prosecute under the statute will be made by law enforcement officials on an ad-hoc basis and will be based upon their own predilections and standards. It is axiomatic that, because this is a nation of laws rather than individuals, criminal statutes proscribe specific conduct, not any individual's perception of that conduct. It follows that the majority's construction of the solicitation of sodomy statute offends fundamental notions of due process, and is impermissibly vague.

3. Georgia does, of course, have a vital interest in criminalizing acts such as those committed by the appellant in this case, and the General Assembly has protected those interests by enacting statutes that prohibit and punish such conduct. If the solicitation of sodomy statute is struck down, criminal defendants such as the appellant in this case will not go unpunished. Rather, they will be eligible for punishment under Georgia's statutes prohibiting aggravated sodomy,[27] public indecency,[28] aggravated assault,[29] false imprisonment,[30] and the sexual battery of detained individuals.[31] These statutes and others are available to prosecute the type of crimes at issue in this

---

[24] See *Grayned*, 408 U. S. at 108-109; *Papachristou*, 405 U. S. at 166-167; *Roemhild*, 251 Ga. at 572.

[25] *Roemhild*, supra (quoting *Grayned*, 408 U. S. at 109).

[26] *Papachristou*, 405 U. S. at 166 (quoting *Winters v. New York*, 333 U. S. 507 (68 SC 665, 92 LE 840) (1948)).

[27] OCGA § 16-6-2 (b).

[28] OCGA § 16-6-8.

[29] OCGA § 16-5-21.

[30] OCGA § 16-5-41.

[31] OCGA § 16-6-5.1.

case, and they are more than sufficient to serve the State's interest in protecting the citizenry and punishing wrongdoers such as appellant.

As recounted by the majority, appellant offered his victim money in exchange for sex. Thus, he ought to have been charged with pandering under OCGA § 16-6-12. He then told his victim that "she was going to" perform oral sex on him, and then he "tried to force her to perform oral sex."[32] Accordingly, he was charged with, among other things, attempted aggravated sodomy. Aggravated sodomy is distinguishable from sodomy in that it involves forcing another to perform sodomy against their will.[33] Obviously, the State has a vital interest in criminalizing acts that force someone to engage in oral sex against their will, just as it does in criminalizing rape and other acts of sexual assault. Thus, the aggravated sodomy statute stands on solid constitutional footing. However, just as the State's interest in criminalizing acts of sexual assault and rape does not justify a law prohibiting the solicitation of consensual, non-commercial and legal sexual intercourse between consenting adults, the State's interest in criminalizing acts of aggravated sodomy does not justify the law prohibiting the solicitation of consensual, non-commercial and legal sodomy between consenting adults.

4. In conclusion, the majority's legal analysis is unsupportable and fatally flawed. Once the proper constitutional inquiry is applied, it becomes clear that the solicitation of sodomy statute is overbroad in that it reaches a substantial amount of constitutionally protected conduct without serving any vital government interest. Moreover, it defies common sense by making it a crime to discuss conduct that is manifestly legal once it is actually performed. Furthermore, the majority's construction of the solicitation of sodomy statute fails to provide ascertainable standards for its enforcement and does not provide notice of what conduct it proscribes, rendering it unconstitutionally vague. Finally, if the solicitation of sodomy statute is struck down, it will not hamper the State's ability to prosecute individuals such as the appellant in this case. For all of these reasons, I would strike down OCGA § 16-6-15 (a) and reverse that portion of appellant's conviction.

DECIDED FEBRUARY 28, 2000 —
RECONSIDERATION DENIED MARCH 24, 2000.

*Paul W. David*, for appellant.

---

[32] Op. at 242.
[33] OCGA § 16-6-2 (a).

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.